[No. A038899. First Dist., Div. Five. Aug. 11, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
DANIEL GLICK, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, and Scott Spear, Assistant Public Defender, for Defendant and Respondent.

**OPINION**

**LOW, P. J.**—The People appeal from the dismissal of the action following the grant of defendant Daniel Glick's suppression motion (Pen. Code, §§ 1385, 1238, subd. (a)(7)). The trial court granted the motion after finding that the arresting officer acted unreasonably when he stopped defendant's car in the erroneous belief that the New Jersey license plate was missing a

registration sticker. We conclude that the officer's mistake did not preclude a finding of reasonableness and the traffic stop was lawful.

## I

While on patrol at 11 p.m., Police Officer David Kozicki stopped defendant while driving a Ford Mustang because its New Jersey license plates displayed no current registration tags. Unknown to the officer, New Jersey law does not require renewal tags to be placed on the license plate of private vehicles as does California. Instead, that state requires the annual reinspection of such vehicles for safety and equipment violations. (N.J. Stat. Ann., § 39:8-2; N.J. Admin. Code, tit. 13, § 13:20-32.1.) This is evidenced by a reinspection approval sticker which is displayed in the lower left-hand corner of the windshield. (N.J. Admin. Code, tit. 13, §§ 13:20-32.9, 13:20-33.1(h); N.J. Stat. Ann., §§ 39:8-9, 39:8-11.) Although the officer did not look for one, there was no reinspection sticker on the front windshield either. When defendant could not produce his driver's license and vehicle registration, he was frisked and detained while Officer Kozicki ran a license check. (Veh. Code, § 40302, subd. (a).) Within seven to ten minutes, he received a report that the New Jersey plates belonged to a 1984 Chevrolet. A check of the vehicle identification number revealed that the Mustang, upon which stolen New Jersey license plates were placed, was stolen in Richmond, California, from a California auto dealer. Kozicki arrested defendant for auto theft. A search of his person uncovered a bag containing more than one gram of cocaine. Defendant was charged with possession of cocaine (Health & Saf. Code, § 11350) and auto theft (Veh. Code, § 10851).

At his motion to suppress, defendant argued that the officer's mistake of foreign law made the stop unreasonable. The People argued that the officer's good faith belief that registration tags were missing was reasonable and that the stop was lawful. Officer Kozicki testified that he stopped defendant under the belief that New Jersey plates required registration stickers as in California. He stated that in his experience he has stopped at least 75 out-of-state cars from 9 states for faulty registration, and every one of these states required registration stickers on license plates. In granting the motion, the court praised the officer's good work, but implicitly ruled that his honest but erroneous belief that New Jersey law required registration stickers could not support the traffic stop.

## II

■ At the outset, we observe that defendant has standing to challenge the detention as unreasonable. All drivers on public highways, even those who are subsequently determined to be driving stolen vehicles, have a

protected privacy interest to be free from unreasonable seizures. (See *People v. Lionberger* (1986) 185 Cal.App.3d Supp. 1, 4-5 [230 Cal.Rptr. 358]; 4 LaFave, Search and Seizure (2d ed. 1987) § 11.3(e), p. 329.) This right is separate from any expectation of privacy the driver has in the car or its contents (see *United States v. Salvucci* (1980) 448 U.S. 83, 90-93 [65 L.Ed.2d 619, 627-629, 100 S.Ct. 2547]; *Rakas v. Illinois* (1978) 439 U.S. 128, 143-149 [58 L.Ed.2d 387, 400-405, 99 S.Ct. 421]), and is personal to the defendant the same as if he were walking along a public street. We conclude that any driver may question the legality of the initial police detention.

■ The People argue that the officer's mistake in the application of the New Jersey Vehicle Code provision was objectively reasonable under the circumstances. We agree. ■ They also argue that the officer's conduct constituted a "good faith exception" to the exclusionary rule. (See *United States v. Leon* (1984) 468 U.S. 897, 923 [82 L.Ed.2d 677, 698-699, 104 S.Ct. 3405]; *Massachusetts v. Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424]; *United States v. Calandra* (1974) 414 U.S. 338, 348 [38 L.Ed.2d 561, 571-572, 94 S.Ct. 613].) We decline the invitation to create a warrantless search exception to the exclusionary rule where there is no need to depart from traditional Fourth Amendment analysis.[1] We believe the *Leon* exception should be strictly limited to the situation which gave rise to the rule—namely, where the officer conducts a search upon the good faith, reasonable reliance on a facially valid warrant or a statute which is subsequently held to be invalid. (See *Maryland v. Garrison* (1987) 480 U.S. 79, 85-87 [94 L.Ed.2d 72, 81-82, 107 S.Ct. 1013, 1017-1018]; cf. *Illinois v. Krull* (1987) 480 U.S. 340, 349-353 [94 L.Ed.2d 364, 375-377, 107 S.Ct. 1160, 1167-1169].) The principal rationale relied upon by the *Leon* court—that it would serve no deterrent purpose to punish the officer, acting in good faith, for the magistrate's error—is not present in this case. (*United States v. Leon, supra,* at pp. 915-921 [82 L.Ed.2d at pp. 693-697]; compare *State v. Mendoza* (1987) 71 Utah.Adv.Rep. 24 [748 P.2d 181, 185-186].) Here, the officer was acting on his own and his actions should be examined under the objectively reasonable standard.

■ The touchstone inquiry in all Fourth Amendment cases is the reasonableness—not certainty—of the official's conduct. (See *Hill v. California* (1971) 401 U.S. 797, 804 [28 L.Ed.2d 484, 490, 91 S.Ct. 1106].) Where the official has a reasonable basis for believing that the intrusion was warranted, the exclusionary rule should not apply. (See *United States v. Leon, supra,*

---

[1] The majority opinion in *Leon* has been severely criticized for creating the exception where there was no Fourth Amendment violation in the first place. (*United States v. Leon, supra,* at pp. 960-964 [82 L.Ed.2d at pp. 722-725], dis. opn. by Stevens, J.; 1 LaFave, Search and Seizure, *op. cit. supra,* § 1.3(e), pp. 59-60.)

468 U.S. at pp. 918-919 [82 L.Ed.2d at pp. 695-696]; *United States* v. *Williams* (5th Cir. 1980) 622 F.2d 830, 840-841.) There is no analytic benefit in classifying the officer's mistake as being an exception to the exclusionary rule. ■ Accordingly, we reject defendant's contention that a mistake of law, no matter how reasonable, automatically invalidates the search or seizure upon which it is based.

### III

This detention for an investigative vehicle check, based on misinterpretation or ignorance of foreign law, presents a case of first impression. But, as with all alleged violations of the Fourth Amendment, we must answer the question whether the officer's conduct under the circumstances known to him was objectively reasonable. (See *Scott* v. *United States* (1978) 436 U.S. 128, 137 [56 L.Ed.2d 168, 177, 98 S.Ct. 1717].) ■ The Fourth Amendment proscribes only *"unreasonable"* searches and seizures, and that proscription applies to investigative stops of vehicles as occurred here. (See *United States* v. *Sharpe* (1985) 470 U.S. 675, 682 [84 L.Ed.2d 605, 613, 105 S.Ct. 1568]; *Delaware* v. *Prouse* (1979) 440 U.S. 648, 663 [59 L.Ed.2d 660, 673, 99 S.Ct. 1391].) To justify the particular intrusion as being reasonable, the People " 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " (*Scott* v. *United States, supra,* at p. 137 [56 L.Ed.2d at p. 177], quoting *Terry* v. *Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]; see *Hill* v. *California, supra,* 401 U.S. at pp. 804-805 [28 L.Ed.2d 484, 490]; also *People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].)

The distinction between a reasonable mistake of fact, which is excusable, and a mistake of law, which is not, is often hard to draw and it serves no useful purpose in this analysis. Several California cases which have addressed the issue of "reasonable mistake of law" have ruled that the search or seizure was unlawful. (See *People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753]; *People* v. *Lopez* (1987) 197 Cal.App.3d 93 [242 Cal.Rptr. 668]; *In re Arthur J.* (1987) 193 Cal.App.3d 781 [238 Cal.Rptr. 523]; *People* v. *Howard* (1984) 162 Cal.App.3d 8 [208 Cal.Rptr.

353].) The characterization of the problem as a mistake of law or fact begs the question which is the reasonableness of the officer's conduct. (See *People v. Howard, supra,* at p. 15.)

In *Teresinski,* the People argued, as here, that the officer's reasonable mistake of law excused the unlawful curfew stop and did not warrant the suppression of the contraband consequently discovered. At 2 a.m., the arresting officer observed an unfamiliar car proceeding through town and thought that both the driver and the two passengers were minors and thus were in violation of the 10 p.m. curfew applicable to juveniles. At one point the officer observed defendant and the front seat passenger glance at him and reach down, which led him to believe they were hiding alcohol or reaching for a weapon. It turned out that defendant driver was an adult and only one of the other passengers was a minor. A search of the car uncovered a gun, an open beer can, marijuana and a bag of stolen money. It was later learned that the money was stolen from a 7-Eleven store in a neighboring town. The Supreme Court upheld the superior court's granting of the suppression motion on the ground that the officer lacked an objectively reasonable basis to suspect that defendant or his passengers were violating the prohibitory language of the ordinance. (*People* v. *Teresinski, supra,* 30 Cal.3d at pp. 830-831, 832.) An accurate reading of the ordinance prevents minors from loitering or playing on the public streets after 10 p.m. Driving along the street in a lawful manner was deemed not to fall within that language. (*Id.,* at p. 830.) In so holding, the court left open the possibility that exceptional circumstances may excuse an officer's mistake of law, but concluded that the officer's conduct was not reasonable in that case. (*Id.,* at pp. 831-832.) The court reasoned that the curfew ordinance was neither obscure nor ambiguous, and that a prior judicial opinion held that this identical conduct did not violate the ordinance.

■ We cannot state categorically that a mistaken interpretation of a foreign law is unreasonable. Instead, we look to the particular facts known to the officer at the time. (See *Delaware* v. *Prouse, supra,* 440 U.S. at pp. 653-654 [59 L.Ed.2d at p. 667]; *Terry* v. *Ohio, supra,* 392 U.S. at pp. 21-22 [20 L.Ed.2d at p. 905]; *In re Tony C.* (1978) 21 Cal.3d 888, 892-893 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ It is well established that circumstances short of probable cause may justify an investigative detention reasonably related in duration and scope to the circumstances which justified the intrusion in the first place. (*United States* v. *Sharpe, supra,* 470 U.S. at p. 682 [84 L.Ed.2d at p. 613]; *United States* v. *Hensley* (1985) 469 U.S. 221, 226 [83 L.Ed.2d 604, 610, 105 S.Ct. 675]; *Terry* v. *Ohio, supra,* 392 U.S. at p. 20 [20 L.Ed.2d at p. 905]; *In re Tony C., supra,* 21 Cal.3d at pp. 892-893.) "[T]he permissibility of a particu-

lar law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." (See *Delaware* v. *Prouse, supra,* 440 U.S. at p. 654 [59 L.Ed.2d at pp. 667-668], fn. omitted; also *United States* v. *Place* (1983) 462 U.S. 696, 703 [77 L.Ed.2d 110, 118, 103 S.Ct. 2637].)

▮ The officer had a duty to ensure that the vehicles which operate on our state highways are fit for operation and that the license and vehicle registration requirements are met. (See *Delaware* v. *Prouse, supra,* 440 U.S. at p. 658 [59 L.Ed.2d at p. 670].) The registration requirement and the reinspection sticker are designed to keep dangerous cars off the highway. Moreover, it is unlawful to operate an out-of-state vehicle on our streets which is not registered in the foreign state (Veh. Code, § 40001, subd. (b)(l)), or, if properly registered in that state, is not re-registered in California within 20 days of the owner accepting gainful employment or establishing his residency (Veh. Code, § 6700, subd. (a)). An officer cannot reasonably be expected to know the different vehicle registration laws of all the sister states. A proportionately few persons from New Jersey regularly visit this state by vehicle. As Officer Kozicki testified, in his six years on the force he has never encountered a vehicle registered in New Jersey while he stopped out-of-state vehicles from nine other states. We conclude that the New Jersey Vehicle Code is not something the officer is reasonably expected to know or has an opportunity to routinely enforce.[2]

The stop here was brief and was limited to the purpose of verifying the vehicle's registration. Because of the inherently transient nature of automobiles, allowing officers to make a brief investigative stop to check vehicle registration upon a reasonable, albeit mistaken, suspicion of a violation, enhances the likelihood that officers will be able to keep unsafe and stolen vehicles off our highways. This strong governmental interest outweighs the minimal intrusion into a driver's Fourth Amendment rights occasioned by a stop. Had the car been validly registered, any confusion could have been quickly dispelled simply by pointing to the reinspection sticker which should be posted on the windshield.

A different outcome may be required if the vehicle was from a contiguous sister state or if that state's motorists routinely drive along our roads (i.e., a California Highway patrolman stationed in Tahoe may be reasonably ex-

---

[2] We have some doubt that the officer would be able to interpret the law even if he had access to the New Jersey codes. Section 39:3-33 of the New Jersey Annotated Statutes requires all automobiles to be registered and carry license plates and authorizes the director to issue "registration plate inserts." However, it is necessary to read the New Jersey Administrative Code to discern that registration plate inserts are used on commercial vehicles only. (N.J. Admin. Code, tit. 13, § 13:20-33.3(a)(7).)

pected to have a general understanding of Nevada's vehicle registration laws). But that is not the case here. In this officer's experience, the laws of the states contiguous to California and other nearby states all require registration stickers to be affixed to the license plates.[3] We conclude that any diligent officer, faced with the same set of facts, could reasonably conclude that defendant's car lacked valid registration tags and would effect a limited traffic stop.

The judgment of dismissal is reversed. The superior court is directed to reinstate the information and to enter an order denying the motion to suppress evidence.

King, J., and Haning, J., concurred.

---

[3] See Arizona Revised Statutes Annotated section 28-308; Arizona Official Compilation of Administrative Rules and Regulations, R17-4-218, subdivision G; Oregon Vehicle Code section 803.555; Oregon Revised Statutes section 481.230, subdivision (b); Nevada Revised Statutes section 482.265; Revised Code of Washington section 46.16.230; and Washington Administrative Code, title 308, section 308-96A-295.