[No. G010370. Fourth Dist., Div. Three. Mar. 31, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ROBERT MELNYK, Defendant and Appellant.

**COUNSEL**

Berley & DeVito and Cara DeVito, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Keith I. Motley and Louis R. Hanoian, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

CROSBY, J.—Does a car thief have standing to attack an allegedly illegal search and seizure of the vehicle? *No.*

A Fountain Valley patrol officer found Richard Robert Melnyk sleeping in an automobile in a restaurant parking lot about 1:45 a.m. on December 22, 1989. A mother and her baby were also sleeping inside. After an acrimonious detention and the arrival of backup officers, police searched the interior of the vehicle. Purloined property was found within, and the automobile itself was subsequently discovered to be stolen.

 Despite some authority to the contrary (see *People* v. *Glick* (1988) 203 Cal.App.3d 796, 799 [250 Cal.Rptr. 315]), we believe the law is clear that an auto thief, like a second-story man apprehended in the victimized premises, has no standing to assert a reasonable expectation of privacy in the stolen car. In *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the United States Supreme Court discussed that very point: "The Court in *Jones* [v. *United States* (1960) 362 U.S. 257 (4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233)] was quite careful to note that 'wrongful' presence at the scene of a search would not enable a defendant to object to the legality of the search. [Citation.] The Court stated: 'No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are

proposed to be used against him. *This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched.*' [Citation.] ([E]mphasis added.) Despite this clear statement in *Jones*, several lower courts inexplicably have held that a person present in a stolen automobile at the time of a search may object to the lawfulness of the search of the automobile. [Citations.]" (*Id.* at p. 141, fn. 9 [58 L.Ed.2d at pp. 399-400].) ■■■■ Consequently, we disagree with the *Glick* decision to the extent it holds otherwise and determine Melnyk lacked standing to contest the search and seizure of the car.[1] (See 4 LaFave, Search and Seizure (2d ed. 1987) § 11.3(e), pp. 322-341.)

Judgment affirmed.[2]

Sills, P. J., concurred.

**WALLIN, J.,** Concurring.—I agree with my colleagues that Melnyk had no expectation of privacy in the car he stole. (See *United States* v. *Salvucci* (1980) 448 U.S. 83, 92, 95 [65 L.Ed.2d 619, 628-630, 100 S.Ct. 2547] [defendant's possession of stolen mail did not confer automatic standing]; *People* v. *Solario* (1977) 19 Cal.3d 760, 763-764 [139 Cal.Rptr. 725, 566 P.2d 627] [burglar may not vicariously assert homeowner's right to assert

---

[1]The parties agree the court decided the motion to suppress on the merits, although the district attorney *did* object to defendant's standing. They also agree that the judge never ruled on that issue. This failure to obtain a ruling below, the defense argues, forecloses the question of standing on appeal.

We disagree. Where a pure question of law is presented and it is clear no other evidence could be offered on the point, a reviewing court may consider a new theory even though it was never raised in the trial court. (*Green* v. *Superior Court* (1985) 40 Cal.3d 126, 138 [219 Cal.Rptr. 186, 707 P.2d 248]; *People* v. *Neer* (1986) 177 Cal.App.3d 991, 1006 [223 Cal.Rptr. 555] (dis. opn. of Crosby, J.).)

[2]Defendant does raise another issue, but it is so frivolous we decline to address it in the body of the opinion. Certain allegedly coerced statements made by the female arrested with Melnyk found their way into his trial, to his prejudice we are told. But in both opening statement and closing argument, defense counsel conceded his client was guilty of either taking the automobile without the owner's consent or receiving stolen property and told the jury to select one or the other. The jury elected the former, a violation of Vehicle Code section 10851 (the range of punishment for receiving stolen property is essentially the same).

The trial was about a companion burglary charge, but the jurors could not reach a verdict on that one. It was eventually dismissed when Melnyk, who appears to have decided on a career, admitted three prior convictions. Now, we are seriously urged to find his fellow arrestee's allegedly coerced statements prejudiced him because an acquittal on the burglary count might have meant a better arrangement with the prosecution. If Rube Goldberg had chosen law school over cartooning, that sort of reasoning might have caught on. Fortunately, he did not.

knock-notice requirement].)[1] But, that conclusion arguably would not resolve the propriety of denying his motion to suppress evidence if Officer Mario Miramontes's detention of the car and its occupants was unlawful. (*In re Tony C.* (1978) 21 Cal.3d 888, 899 [148 Cal.Rptr. 366, 582 P.2d 957] [illegal detention required suppression of stolen goods found on defendant].)[2] However, using a more thorough explication of the facts, I conclude the detention was proper.

About 1:45 a.m., Miramontes saw an occupied automobile in a shopping center lot between a closed bank and a restaurant which was about to close. He noticed the car had no front license plate and was backed up against the wall of the bank. Because there had been burglaries in the area in the past year, he turned off his headlights and drove into the lot to investigate.

Miramontes lit up the interior of the car with his flashlight and saw Melnyk and a woman passenger, Shanel Harvey, asleep in the front seat. Miramontes approached the passenger side of the car and tapped on the window. He asked for identification. Harvey produced a California identification card but Melnyk denied having any. Miramontes walked around the car to talk further with Melnyk, radioed the license number to dispatch, and asked for a backup unit.

Miramontes was not satisfied with the identification Melnyk finally produced, a Social Security card and an Oregon food stamp card in the name of Scott Smith, because the name and birth date on the cards did not match Melnyk's previous answers. Melnyk was very hostile and upset as Miramontes repeatedly asked for better identification.

While he was questioning Melnyk, Miramontes shined his flashlight inside the car, and noticed a hammer and some credit cards on the driver's side floorboard. Believing the hammer was intended as a weapon, he asked Melnyk to step out of the car, keeping his hand on his partially drawn gun. He patted down Melnyk and directed him to sit on the steps of the bank.

Miramontes went back to the car for a closer look at the credit cards and saw they were in the name of Paula Miller. He questioned Melnyk about who

---

[1]There is no need for my colleagues to disagree with *People* v. *Glick* (1988) 203 Cal.App.3d 796 [250 Cal.Rptr. 315] to reach their conclusion. The case merely held that a passenger has standing to object to a detention of the vehicle in which he or she is riding. It expressly recognized that an individual's interest in freedom of movement is disparate from an expectation of privacy in a dwelling or automobile. (*Id.* at pp. 799-800.) My colleagues ignore the former to focus on the latter.

[2]If the rule were otherwise, the deterrent effect of the Fourth Amendment would be nil. Unfounded detentions would increase exponentially. Because most warrantless searches are aimed at drugs or stolen property, the police would gladly sacrifice other fruit if they could use all seized stolen property as evidence. Usually, not much more is needed to convict.

the cards belonged to and was told a girlfriend, but Melnyk could not recall her address or phone number. Miramontes took the credit cards, phoned dispatch with the numbers to see if they were stolen and searched the car further. He found Melnyk's driver's license under the front seat. Melnyk became increasingly hostile and uncooperative.

The backup officers had arrived and questioned the woman passenger, Harvey. She consented to a search of her purse, after telling the officers in response to questioning that they would find a stolen wallet placed there by Melnyk. She also volunteered that the car was stolen.

The police dispatcher notified Miramontes the credit cards were stolen in a burglary in Costa Mesa in which a car was also taken. The license plate number did not correspond to the stolen vehicle's, but the vehicle identification number was checked and it did. Miramontes arrested Melnyk and Harvey.

Our review standard regarding a motion to suppress evidence is well established: " '[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' [¶] . . . 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' [Citation.] Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather . . . in such review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citation.] On that issue, in short, the appellate court exercises its independent judgment." (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961], fn. omitted.)

Under the undisputed facts, Miramontes approached the parked automobile to investigate its occupants and presence in the parking lot. However, this was not a detention; not all contacts between the police and citizens are. "[T]here are . . . 'consensual encounters' [citation], which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' [Citation.]" (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)

Miramontes's use of a flashlight did not turn the encounter into a detention. (*People* v. *Perez* (1989) 211 Cal.App.3d 1492, 1496 [260 Cal.Rptr. 172]; *People* v. *Rico* (1979) 97 Cal.App.3d 124, 128-130 [158 Cal.Rptr. 573]; compare *People* v. *Wilkins* (1986) 186 Cal.App.3d 804, 809 [231 Cal.Rptr. 1] [police car blocked egress]; *People* v. *Bailey* (1985) 176 Cal.App.3d 402, 404-406 [222 Cal.Rptr. 235] [police activated emergency lights].) Nor did tapping on the window and asking for identification change the nature of the encounter. In *People* v. *Lopez* (1989) 212 Cal.App.3d 289 [260 Cal.Rptr. 641], we found no detention occurred when a police officer accosted an individual, asked him several questions, and requested identification. (*Id.* at pp. 291, 293.)

During the course of the identification inquiry, Miramontes saw credit cards and a hammer lying on the floor of the automobile. While this circumstance may have been innocuous enough by itself, it was coupled with Melnyk's lie about having identification, his production of suspicious identification, and recalcitrance about providing more. At that point, given the time, the location of the vehicle, and all of the other factors which had arisen, a detention for further investigation was appropriate. (*People* v. *Shoemaker* (1971) 16 Cal.App.3d 316, 320 [93 Cal.Rptr. 921] [questionable responses to request for identification justified further detention]; see also *People* v. *Loudermilk* (1987) 195 Cal.App.3d 996, 1002-1003 [241 Cal.Rptr. 208] [lie about lack of identification justified seizure of wallet].)

The search of the vehicle about which Melnyk complains occurred during the valid detention. As noted, I agree with my colleagues that Melnyk has no standing to complain that the search occurred without probable cause. The judgment is properly affirmed.

Appellant's petition for review by the Supreme Court was denied June 18, 1992. Kennard, J., was of the opinion that the petition should be granted.