Filed 10/15/15  P. v. Lafond CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDALL K. LAFOND,<br><br>    Defendant and Appellant. | D066439<br><br><br><br>(Super. Ct. No. SCS270276) |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.

Mark Duane Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Amanda E. Casillas and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Randall K. LaFond was sentenced to three years eight

months in prison after pleading guilty to multiple counts including first degree burglary. Defendant's appeal concerns only the admission of evidence of the burglary gained from the search of a car defendant had rented. Police searched the car after arresting defendant for violating a restraining order. The officer testified he searched the car because he believed defendant might have had a gun based upon a statement from the victim that defendant often carried a gun on his person or in his car.

Among other findings, the trial court found defendant committed a "fraud" and thus had no reasonable expectation of privacy when he used his former spouse's address as his then "current" address on the car rental agreement, despite the fact his former spouse about six months' earlier had obtained a restraining order against defendant preventing him from being at *that* address, to rent the car, which he then failed to return by the date provided under the rental agreement. The trial court therefore held defendant lacked standing under the Fourth Amendment to challenge the search. Defendant contends the court incorrectly denied his motion to suppress the evidence from the car. Affirmed.

### FACTUAL OVERVIEW

The victim broke up with defendant, her fiancé, in January 2014[1] after living together in El Cajon, California for approximately one year. The victim moved into her parent's home in Coronado, California and obtained a domestic violence restraining order against defendant. Sometime during the week of January 25th, a burglar broke into the

---

[1] All dates are in 2014 unless otherwise noted.

victim's parents' home and stole only the victim's personal belongings. Sometime on or around January 30th, defendant appeared at the victim's residence. The police were called, and defendant was served notice of the restraining order against him.

Defendant rented a 2012 Dodge Charger from a car rental company on January 29th. Under the agreement, defendant was to return the car by 7:16 p.m. on January 31st. Defendant signed the rental contract and provided a credit card number for the company to bill him.

Defendant did not provide a correct and current address to the rental company. The address in the rental paper work was that of defendant's former wife, who lived in La Mesa, California and who had a separate restraining order against defendant prohibiting him from being at that address. The restraining order barring defendant from his ex-wife's home had been in place since June 2013. Defendant failed to return the car on time and did not contact the company to extend the rental period. On February 1, the manager attempted to charge defendant's credit card for the overdue rental, but the card was declined.

On February 2, the victim was out on a walk with her sister when defendant confronted her near a high school. The victim made a call reporting the violation of the restraining order. Officer Shane Boyd of the Coronado Police Department responded to the call. He located defendant near the school, about three to four blocks away from the victim's residence. The victim was not present when Boyd arrived at the scene.

Defendant gave multiple explanations for his presence in Coronado, first claiming

3

he was watching a youth lacrosse game or practice that was occurring across the street, and later claiming he was there to meet a friend. Defendant did not provide Boyd with any explanation for why he would be observing a youth lacrosse game in Coronado. Defendant provided Boyd with the friend's name and a telephone number, but the number was disconnected when Boyd tried calling it. Defendant told Boyd that he lived in Santee, California; that he drove to Coronado; and that his car was parked a couple of blocks away. Defendant admitted he was aware that the victim had a restraining order against him and acknowledged contacting her in violation of it.

Boyd was joined at the scene by Officer Estrada and Sergeant Mitchell. Boyd left defendant with the other two officers while he went to interview the victim. After Boyd's departure, Estrada conducted a pat down search of defendant, which did not reveal any weapons. This search was witnessed by Mitchell, who testified at the suppression hearing.

Boyd interviewed the victim at her residence. The victim told Boyd that she and defendant had lived together for about a year before she broke up with defendant because of his increasing physical and verbal abuse. The victim believed that defendant was currently homeless. The victim told Boyd that defendant had appeared at her home a few days earlier, that she called the police, and that an officer served him notice of the restraining order. The victim showed Boyd a copy of the restraining order, and Boyd verified that defendant had been served notice. Boyd testified that the order prohibited defendant from possessing firearms.

4

The victim also informed Boyd of a recent burglary. The victim told Boyd she lived in a small building behind the main house belonging to her parents. The burglar stole a green suitcase containing clothing and other items. The victim said she suspected defendant burglarized her home, but she did not elaborate as to why she suspected him. The victim also told Boyd that defendant frequently carried a firearm on his person or in his car.

Mitchell arrived at the victim's residence while Boyd was speaking with the victim and overheard their conversation. Boyd told Mitchell that defendant had been known to carry firearms on his person or in his vehicle. Mitchell understood that domestic violence restraining orders typically had language requiring respondents to give up any firearms in their possession. Mitchell also knew that the burglar had removed personal items from the victim's residence, and he suspected defendant given the recent violations of the restraining order. After interviewing the victim, Boyd radioed Estrada and told him to arrest defendant for violation of a restraining order.

Mitchell believed based upon the totality of the circumstances[2] that defendant likely had a firearm in his car. Mitchell decided to try to locate the car and the possible firearm for public safety reasons. He specifically testified that: "My concerns were based on, if the defendant was able to get out of custody for whatever reason, there's a firearm

_____

[2]    These circumstances were: the domestic violence restraining order; defendant's encounter with victim and her sister while they were out on a walk in violation of that order; defendant's failure to provide an explanation for his being in Coronado that made sense or was verifiable; defendant parking his car blocks away from where he was arrested, even though there was parking available nearby; the victim's testimony regarding defendant's firearm possession; and the burglary.

in my city in close proximity to the victim. I didn't want something to escalate."

Mitchell located the rental car about three blocks from where defendant was arrested. He noticed there were plenty of open parking spaces closer to where defendant had been arrested. Looking into the car from the outside, Mitchell could see a lot of personal belongings in the car. Mitchell saw in the back seat several plastic bags appearing to contain clothes in addition to other odd items such as cat food in rubber containers, a leather jacket, and a briefcase. The plastic bags were white and partially opaque, Mitchell could tell that the bags contained clothing, but could not discern whether they were men's or women's clothes.

Mitchell began searching underneath the front seat for firearms. Mitchell did not find a firearm and moved on to other parts of the interior. During the search of the car, Mitchell found brand new pairs of women's underwear with the tags still on them.

Failing to find a firearm, Mitchell moved on to searching the trunk. Inside the trunk, Mitchell found a number of suitcases. Inside one of the suitcases, Mitchell found what appeared to him to be women's shoes. Another suitcase contained women's underwear that appeared to have been already worn or used. At that point, Mitchell realized he had probably just recovered stolen property belonging to the victim and stopped his search. The victim arrived at Mitchell's location and began identifying items that belonged to her.

On February 5, a manager at the rental car company discovered that defendant had failed to return the car on time. He also saw a note in the company records stating that

6

defendant had been arrested by the Coronado Police Department on February 2. That same day, the manager attempted to recover the car from the police, but defendant had already been released and had taken the car back into his possession.

The manager sent a demand letter on February 6 to the address defendant provided, informing defendant that his rental was overdue and that his rights to possess the car had been revoked by the company. The manager officially reported the car stolen on February 25. The police later arrested defendant for auto theft and impounded the vehicle.

PROCEDURAL OVERVIEW

The San Diego County District Attorney filed multiple charges against defendant for burglarizing his ex-fiancée's home and violating a restraining order.[3] Defendant sought to suppress evidence gained from the search of his rental car under Penal Code section 1538.5. During the hearing, the trial court made a factual finding that defendant knowingly provided an invalid address and thereby committed a "fraud" when he initially rented the car, noting the address defendant provided on the rental application was not then his or if it was, he then would be in violation of the TRO obtained by his former spouse. The court held "that once a renter has gone beyond the period of rental, hasn't contacted the rental agency, hasn't made arrangements to extend the lease . . . he loses his reasonable expectation of privacy in that vehicle."

---

3    Count 1, first degree burglary (Pen. Code, §§ 459/460); count 2, stalking with restraining order in effect (Pen. Code, § 646.9, subd. (b)); count 3, stalking (Pen. Code, § 646.9, subd. (a)); count 4, violation of court order (Pen. Code, § 273.6, subd. (a)); and count 5, violation of court order (*ibid.*).

7

The court also held that even if defendant had standing to challenge the search, the search was supported by probable cause. The court concluded the police had probable cause to search for a firearm. This finding was based upon defendant's violation of the no-contact provision of the restraining order, the frequent contact the victim had with defendant in the past, and the victim's statement that defendant frequently carried a gun either on his person or in his car. The court also held the search was valid as a search incident to arrest. As such, defendant's motion to suppress was denied.

Defendant pled guilty to all charges. The court imposed a total sentence of three years eight months. Defendant filed a timely notice of appeal. Defendant's sole claim on appeal is that the trial court erred in not suppressing the evidence recovered from the rental car.

DISCUSSION

I

Standard of Review

"Under California law, issues relating to the suppression of evidence derived from police searches and seizures must be reviewed under federal constitutional standards. [Citations.]" (*People v. Robles* (2000) 23 Cal.4th 789, 794.) "Our review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling. [Citations.]" (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 27.) "In ruling on a motion to suppress, the trial court is charged with (1) finding the historical facts; (2) selecting the applicable rule of law; and (3) applying the latter to the former to determine whether or

not the rule of law as applied to the established facts has been violated." (*People v. Parson* (2008) 44 Cal.4th 332, 345.) On appeal, we review the trial court's factual determinations under the substantial evidence standard while subjecting legal conclusions to de novo review. (*Ibid.*) Because the trial court ruled in favor of the prosecution, we will review the record "in the light most favorable to the People's position." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 780.)

## II

## Standing

To have standing to challenge a search and seizure conducted by the police under the Fourth Amendment to the United States Constitution, a defendant must show a legitimate expectation of privacy that has been infringed upon. (*People v. Thomas* (1995) 38 Cal.App.4th 1331, 1334.) The expectation must be subjectively and objectively reasonable, one "that society is prepared to recognize as reasonable." (*Ibid.*, citing *Katz v. United States* (1967) 389 U.S. 347, 361.) Factors to consider in determining whether a defendant has a legitimate expectation of privacy "include ' "whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." ' " (*People v. Hernandez* (1988) 199 Cal.App.3d 1182, 1189.)

A defendant does not have a legitimate expectation of privacy in a stolen vehicle.

9

(*People v. Shepherd* (1994) 23 Cal.App.4th 825, 828-829; *People v. Melnyk* (1992) 4 Cal.App.4th 1532, 1533.)  However, in cases of rental cars, an overdue defendant might not lose his legitimate expectations of privacy if the rental company takes no action to repossess the vehicle.  (*United States v. Henderson* (9th Cir. 2000) 241 F.3d 638, 647; *United States v. Cooper* (11th Cir. 1998) 133 F.3d 1394, 1398-1402.)

"[F]raud is a species of theft" under California law.  (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 333.)  Significant to the instant case, California law presumes that a defendant commits theft if he or she provides with criminal intent a false name or *address* to the renting agency and fails to return the property on the due date.  (Pen. Code, § 484, subd. (c).)[4]

We hold that defendant did not have a legitimate expectation of privacy in the car because he essentially stole it from the rental company.  Indeed, the trial court made a factual determination that defendant obtained the rental car by knowingly using a false address and thus obtained the vehicle through fraud.  There is substantial evidence in the record to support this finding, as it shows when defendant rented the car he used the home address of his former spouse, which address defendant was then legally barred from returning to as a result of a restraining order she had obtained about six *months*

---

[4]     The full text of subdivision (c) of Penal Code section 484 provides: "Notwithstanding the provisions of subdivision (b), if one presents with criminal intent identification which bears a false or fictitious name or *address* for the purpose of obtaining the lease or rental of the personal property of another, the presumption created herein shall apply upon the failure of the lessee to return the rental property at the expiration of the lease or rental agreement, and no written demand for the return of the leased or rented property shall be required."  (Italics added.)

earlier. Defendant was surely aware this address was not his proper home address at the time he rented the car. What's more, the record shows when asked for a home address by Officer Boyd, defendant provided a different address than the one he provided the rental company.

Defendant nonetheless contends he did not intentionally give an incorrect home address when he rented the car. Even assuming there is evidence in the record that, if credited, would support this finding, as a court of review our role is to review the record to determine whether substantial evidence supports the finding or findings made by the trier of fact, not to make new or contrary findings based on the evidence. (See *People v. Parson*, *supra*, 44 Cal.4th at p. 345.) Because substantial evidence supports the finding of the trial court that defendant obtained the car by knowingly using a false address (see Pen. Code, § 484, subd. (c)), we independently conclude the court properly found defendant had no reasonable expectation of privacy to challenge the subsequent search of the car.

Moreover, defendant's overall conduct further supports an inference that defendant intended to defraud the rental company. Defendant was released from jail within five days of being arrested and resumed control of the rental car. After release, defendant never took any steps to return the car to the company. Defendant was eventually arrested for theft of the rental car about a month after the lease first expired. The fact that defendant never attempted to return the car or negotiate an extension gives rise to a strong inference that defendant deliberately gave a false address to avoid being contacted

11

by the company and that defendant never intended to abide by the rental contract. As such, the trial court's finding that defendant deliberately gave a false address is supported by substantial evidence and the finding that he committed fraud is reasonable.

Defendant argues that he still had a legitimate expectation of privacy because the rental car company had yet to take any steps to revoke defendant's possession of the car at the time it was searched. We disagree. While some federal cases have found that a defendant's legitimate expectation of privacy does not necessarily expire with the lease, we are not bound by this precedent and none of these cases, in any event, concern a vehicle that was obtained fraudulently.

The trial court made a factual finding that defendant deliberately proffered a false address and kept the car past the expiration of the lease. As noted, under California law, obtaining a rental car through a false name or *address* with criminal intent and keeping the vehicle past the expiration of the lease creates a presumption that the vehicle has been stolen. (Pen. Code, § 484, subd. (c).) Intent to steal may be inferred from the circumstances. "Intent is rarely susceptible of direct proof and must be inferred from a consideration of all of the facts and circumstances shown by the evidence. [Citation.] Proof of intent may consist of reasonable inferences drawn from affirmatively established facts." (*People v. Crain* (1967) 255 Cal.App.2d 726, 729.)

In this case, the proffering of the false address, the tendering of a credit card that stopped working soon after the car was rented, and defendant keeping the car well past the expiration of the lease all support an inference that defendant deliberately gave an

12

invalid address to the company with the requisite criminal intent.  Under the substantial evidence standard we are bound to grant the People every reasonable factual inference that supports the trial court's ruling.

Even if defendant did have standing to challenge the search, as explained below we conclude that the search was reasonable under the automobile exception.

III

Search and Seizure

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  Warrantless searches are presumed unreasonable unless the prosecution can prove that the search falls within a recognized exception to the requirement for a warrant.  (*People v. Williams* (2006) 145 Cal.App.4th 756, 761, citing *Mincey v. Arizona* (1978) 437 U.S. 385, 390; *In re Tyrell J.* (1994) 8 Cal.4th 68, 76.)  The standard of proof that the People must meet is preponderance of the evidence.  (*People v. Camacho* (2000) 23 Cal.4th 824, 830; *People v. Jordan* (1990) 217 Cal.App.3d 640, 645.)

The Fourth Amendment permits the warrantless search of an automobile if probable cause exists to believe that the search will produce evidence of a crime.  (*People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059, citing *United States v. Ross* (1982) 456 U.S. 798, 804–809.)  "The ' "specifically established and well-delineated" ' (*Mincey v. Arizona*[, *supra*,] 437 U.S. [at p.] 390) automobile exception to the Fourth Amendment's warrant requirement is rooted in the historical distinctions between the search of an

automobile or other conveyance and the search of a dwelling." (*People v. Superior Court (Nasmeh)* (2007) 151 Cal.App.4th 85, 100, citing *Cal. v. Acevedo* (1991) 500 U.S. 565, 569.) This difference is rooted in the fact that automobiles are readily movable, which increases the chance that evidence might be removed or destroyed before the police can obtain a search warrant. (*Ibid.*, citing *Carroll v. United States*, *supra*, 267 U.S. at p. 153.) "[T]he probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." (*United States v. Ross*, *supra*, 456 U.S. at p. 808.)

" 'The scope of a warrantless search based on probable cause is no narrower -- and no broader -- than the scope of a search authorized by a warrant supported by probable cause.' [Citation.] Thus, 'if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' [Citation.]" (*Cal. v. Acevedo*, *supra*, 500 U.S. at p. 570.)

Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696.) The Supreme Court of the United States has "cautioned that these two legal principles [i.e., reasonable suspicion and probable cause] are not 'finely-tuned standards,' . . . [Citation.] They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed. . . . '[E]ach case is to be

14

decided on its own facts and circumstances.' " (*Id.* at p. 696.)

In reviewing the trial court's decision, we apply a substantial evidence standard to factual findings but apply a de novo standard in reviewing the reasonableness of the search. (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.)

We conclude Sergeant Mitchell had probable cause to search defendant's vehicle for an illegal firearm. The victim said defendant often carried a firearm on his person or in his car. That statement provided Mitchell with a strong and reasonable suspicion that defendant had a firearm in his car. Defendant and the victim had lived together for roughly a year before breaking up. The victim knew defendant well, lending a great deal of credibility to her claim.

The victim had obtained a domestic violence restraining order against defendant for battering her. Defendant had violated the restraining order against him after being served notice. Defendant could not credibly account for his presence in the area, creating a strong inference that defendant deliberately violated the restraining order to menace the victim. Defendant was also an obvious suspect for the recent burglary at the victim's residence. All of these facts pertaining to defendant's recent conduct support Mitchell's suspicion that defendant was violating the restraining order by possessing a firearm.

Moreover, Officer Estrada had already searched defendant's person for a firearm, ruling out the possibility that defendant was carrying a weapon on his person. The victim also believed defendant was currently homeless, increasing the odds that if defendant was in possession of a prohibited firearm, it would be found in his vehicle.

15

Defendant also parked his car far away from where he confronted the victim. Mitchell noted there were plenty of parking spaces closer to defendant's location than where he actually parked his car. This fact indicates that defendant may have deliberately walked a long distance from his car to avoid a search of his vehicle incident to arrest.

We conclude that when all of these facts are taken together, Mitchell had probable cause to search the rental car for evidence that defendant possessed a firearm in violation of the restraining order.

We also conclude Mitchell had probable cause to search the car for stolen property. Though the victim never elaborated as to why she suspected defendant was the burglar when talking to the officers, the circumstances known to Mitchell would have created a strong suspicion that defendant was the burglar. The burglar had chosen the back residence as his target rather than the main house and had taken clothing and other personal items belonging to the victim. These facts, combined with defendant's willful violation of the restraining order, created a strong suspicion that defendant was stalking his ex-fiancée and that defendant was the burglar.

When Mitchell examined defendant's car from the outside, he could see a large number of items in the passenger seat of the car, including clothing in plastic bags. The car had been parked a few blocks away from where defendant had encountered the victim, even though there was closer parking available. From this, Mitchell could have inferred that defendant did not want the victim to catch sight of his car and the items

16

contained in plain view. Even though Mitchell could not tell if the clothing was men's or women's, given the facts known to Mitchell at that moment regarding defendant's conduct and the kind of items the victim reported stolen, probable cause to search the car for stolen goods existed.

It is true that Mitchell's stated reasons for searching the car was to search for a gun rather than stolen goods, but as a rule a search is proper if it is "objectively" reasonable. Mitchell's subjective reason for the search is irrelevant if the search was objectively reasonable under a probable cause analyses. (See *Brigham City v. Stuart* (2006) 547 U.S. 398, 404 [police officer's subjective motivation for search is irrelevant when it comes to evaluating reasonableness of search under Fourth Amendment to the United States Constitution].) We conclude that the search was objectively reasonable based upon probable cause that defendant's vehicle contained stolen goods.

The district attorney and the trial court raised a number of other arguments for why the search was reasonable under the Fourth Amendment, including a community caretaking argument that the Attorney General has adopted. Since we have already concluded that the search was reasonable under the automobile exception, we need not consider these other arguments.

17

DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.