99 Cal.Rptr.2d 707 (2000)
83 Cal.App.4th 501
In re JOSEPH F., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Joseph F., Defendant and Appellant.
No. A086336.
Court of Appeal, First District, Division Five.
August 29, 2000.
Rehearing Granted September 18, 2000.
*709 William M. Balin, under appointment by the Court of Appeal, for Defendant/Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Ronald A. Bass, Assistant Attorneys General, Ronald E. Niver, Margo J. Yu, Deputy Attorneys General, for Plaintiff/Respondent.
Certified for Partial Publication.[1]
*708 KRAMER, J.[*]
Joseph F. appeals from orders declaring him a ward of the juvenile court and placing him on probation after the court sustained a petition (Welf. & Inst.Code, § 602) alleging he committed battery on a police officer and resisted arrest (Pen. Code, §§ 243, subd. (b), 148, subd. (a)). He contends there was insufficient evidence he committed the offenses and an insufficient basis for the gang-related conditions of his probation. We affirm.

BACKGROUND
On February 25, 1998, Fairfield Police Officer Robert Salas was at the Golden West Middle School in Fairfield for a meeting with the school's assistant principal, John Fink. Salas was the police resource officer assigned to the local school district, and as such it was his responsibility to provide a safe and secure environment for the district's schools. Salas testified that at approximately 3:00 p.m. from inside a building he noticed appellant and Raymond G. outside near some classrooms in the "quad area" of the school campus. He reported this sighting to Fink, who went outside to investigate. Salas recognized appellant as a student at a nearby high school. Through the window, Salas saw Fink encounter appellant and Raymond. Appellant appeared to ignore Fink and continued walking. Fink then motioned to Salas to come outside.
Salas went outside. Fink told him he "wanted something done" because appellant had failed to comply with Fink's instructions. Salas testified that Fink wanted appellant detained until he (Fink) could investigate whether appellant, as a nonstudent on campus, was trespassing. Salas never heard Fink instruct appellant to leave the school grounds. Fink did not testify, and there was no evidence of the conversation between him and appellant or exactly why Fink requested Salas's presence.
Salas then went to where appellant and Raymond had proceeded, an area between the administration and counseling buildings, and observed them walking toward a parking lot on campus. Salas intended to detain appellant and Raymond to determine whether they should be arrested for trespassing on the school grounds.
Salas was in uniform and displaying his badge. He identified himself as a police officer and asked appellant to stop. Appellant continued walking, and Salas gave him a verbal command to stop. Appellant responded, "Fuck you, I don't have to listen to you. You're a son of a bitch."
Salas then attempted to apply an arm lock to appellant to make him comply with the instruction to stop, but appellant pulled away. They struggled for several minutes. During the struggle appellant grabbed unsuccessfully for Salas's baton and also grasped Salas's left wrist, hyperextending it by moving it up and down and side to side. Salas broke loose, and appellant continued walking away. Salas was then able to put appellant in "wrist control" by locking appellant's right hand behind his back and applying the right handcuff. A further struggle ensued before Salas was able to apply the left handcuff.
Classes at the middle school end at 1:40 p.m., but other activities occur until shortly after 3:00 p.m. Signs are posted throughout the school stating that visitors are to register at the school office, and high school students are briefed as to rules *710 governing their presence on the middle school campus, which rules are not disclosed by the record. Salas did not know when he detained appellant that appellant had not registered in the middle school's front office. After the arrest Salas learned that a campus monitor had earlier encountered appellant at the soccer field area and told him to leave the campus.

Defense
Appellant testified that when high school let out for the day, he accompanied Raymond onto the middle school campus so Raymond could pick up a house key from his (Raymond's) brother, who was at soccer practice. Appellant was on his way home at the time. A female campus monitor told them to leave because they had no pass. As they were doing so, Fink, whom appellant did not know, approached them and asked who they were. Appellant refused to identify himself to Fink and told Fink he should talk to Raymond, because Raymond was "the one that had business on the campus." Appellant did not stop walking when Fink approached him because Fink had not identified himself and appellant "just thought he was some guy."
Appellant was then approached by Salas, who first told him to "[C]ome here. Mr. Fink wants to talk to you." Appellant replied that he had already been instructed to leave campus, did not need to talk to "him" (presumably Fink), and was on his way home.
When his arm was first grabbed, appellant did not know and could not see who had done so. He thought it might have been Raymond, so he tried "yanking" away. He stopped when he realized it was Salas. He denied grabbing for Salas's baton or grasping his wrist. When Salas pulled out his baton, appellant put his hand up and said "I give up, just arrest me."
Appellant was placed on indeterminate probation. Somewhat ambiguously, he objected to its gang-related terms and conditions, which required that he not (1) be present at any known gathering area of any street gang; (2) associate with any known members or associates of any gang; (3) wear any gang-associated clothing or emblems; (4) possess any gang-related paraphernalia; (5) acquire any permanent or temporary tattoos; and (6) be present at any court proceeding to which he is not a party or witness.

DISCUSSION

I

THE LEGALITY OF THE DETENTION AND ARREST

A. Standard of Review

Appellant contends there is insufficient evidence to support findings that he battered a police officer and resisted arrest because Officer Salas was not engaged in the lawful performance of his duty when he detained appellant.
Upon a claim of insufficient evidence to support a conviction, reviewing courts "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (People v. Mosker (1969) 1 Cal.3d 379, 395, 82 Cal.Rptr. 379, 461 P.2d 659, disapproved on another point in People v. Ray (1975) 14 Cal.3d 20, 30, 32, 120 Cal.Rptr. 377, 533 P.2d 1017.) "The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation.]" (Ibid.; see also In re Roderick P. (1972) 7 Cal.3d 801, 809, 103 Cal.Rptr. 425, 500 P.2d 1.)

B. Battery on a Police Officer, Resisting Arrest

Penal Code[2] section 243, subdivision (b) states, in relevant part: "When a battery is committed against the person of a peace officer ... engaged in the performance of *711 his or her duties ..., and the person committing the offense knows ... that the victim is a peace officer ... engaged in the performance of his or her duties ..., the battery is punishable [as a misdemeanor]." (Italics added.) Section 148, subdivision (a)(1) states, in relevant part: "Every person who willfully resists, delays, or obstructs any public officer ... in the discharge or attempt to discharge any duty of his or her office or employment ... shall be punished [as a misdemeanant]." (Italics added.)
Before a person can be convicted of either of these offenses there must be proof beyond a reasonable doubt that the officer was acting lawfully at the time the offense against him was committed. (In re Manuel G. (1997) 16 Cal.4th 805, 815, 66 Cal.Rptr.2d 701, 941 P.2d 880; see also People v. Gonzalez (1990) 51 Cal.3d 1179, 1214-1215, 275 Cal.Rptr. 729, 800 P.2d 1159 [prosecution must prove every element of the charged offense beyond a reasonable doubt].) "`The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties" for purposes of an offense defined in such terms, if the officer's conduct is unlawful....' [Citation.]" (In re Manuel G., supra, at p. 815, 66 Cal.Rptr.2d 701, 941 P.2d 880.)
Appellant argues that Salas was not acting lawfully because the detention was not reasonable. Appellant contends that well-established rules governing police conduct in public places apply here: that an investigative stop or detention is justified if the circumstances known or apparent to the officer include specific and articulable facts which make the officer suspect (1) some activity related to crime has taken place, is occurring or is about to occur, and (2) the person to be stopped is involved in that activity. The requisite facts must be such as would cause any reasonable officer in a like position, drawing on his or her training and experience, to suspect the same criminal activity and the same involvement by the person in question. (In re Tony C. (1978) 21 Cal.3d 888, 893, 148 Cal.Rptr. 366, 582 P.2d 957.)
According to his testimony, Salas attempted to detain appellant to determine whether he was trespassing on school grounds and, if so, what Fink wanted done about it. Salas articulated that he was fulfilling his responsibility to provide a safe and secure environment for his district's schools. The question presented is thus whether Salas's actions were reasonable.
Schools occupy a special place in our state. Article I, section 28, subdivision (c), of the California Constitution provides: "All students and staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful."
Consistent with this constitutional mandate, section 627, subdivision (c), states: "The Legislature finds and declares that a disproportionate share of crimes committed on school campuses are committed by persons who are neither students, school officials, or staff, and who have no lawful business on the school grounds."[3] Section *712 627.2 prohibits an outsider from entering or remaining on school grounds during school hours without having registered with the principal or the principal's authorized designee. "School hours" are defined as extending from one hour before classes begin until one hour after classes end. (§ 627.1, subd. (c).) Registration requires that the visitor furnish the principal or his designee with the visitor's name, address and occupation, proof of age, his or her purpose for entering school grounds, proof of identity, and "other information consistent with the purposes of this chapter and with other provisions of law." (§ 627.3.) An outsider who enters the school grounds without having registered and fails or refuses to leave promptly after the principal, designee or school security officer has requested the outsider to leave is guilty of a misdemeanor. (§ 627.7, subd. (a).) Education Code section 32211 contains comparable provisions. Also, a person who reenters the school grounds within seven days after being requested to leave is guilty of a misdemeanor. (§§ 626.8, subd. (a)(2), 627.7.)
Section 626.7 provides that if an outsider enters a school campus and it reasonably appears to an officer or school employee designated to maintain order that such outsider entered the campus to commit, or is committing, an act likely to interfere with the peaceful conduct of the activities on the campus, then the designated officer may direct the person to leave. Failure to comply is a misdemeanor.
Section 626.8, subdivisions (a)(1), (a)(2) and (c)(3), provides that any person who enters the school grounds without lawful business thereon and whose presence or acts interfere with the peaceful conduct of school activities is guilty of a misdemeanor if that person remains on the school grounds after being asked to leave by a designated officer or if that person had twice before entered on the same school grounds without lawful business and had interfered with school activities.
California's constitutional mandate and statutory scheme clearly demonstrate that schools are special places in terms of public access. Given the constitutional direction that students have a right to be safe and the legislative findings that outsiders commit a disproportionate number of the crimes on school grounds, access to schools is limited. Those who visit during school hours must register and declare their identity and purpose. Those who are asked to leave, whether or not required to register, must do so or else be guilty of a misdemeanor. Those who repeatedly return to cause disruption are also guilty of a misdemeanor.
Further, and important to this case, the legislative scheme designates school officials as those who monitor access to campuses. This direction requires that school officials have enough information relative to visitors so that the officials can make the judgments necessary to fulfill their responsibilities. Thus, for example, section 626.7 provides that a designated official may ask someone to leave a campus if it reasonably appears to such official that the outsider is committing or is likely to commit an act to interfere with the peaceful conduct of activities of the school. A reasonable judgment will often require that the official know the purported purpose of a visitor's presence. Similarly, since a person who repeatedly disrupts the same campus is guilty of a misdemeanor (§ 626.8, subd. (a)(3)), the identity of an outsider often must be ascertained to determine whether this person had previously caused disruption. A designated official may also ask someone to leave who has not registered or whose registration has been revoked (§ 627.7, subd. (a)), again often requiring that the school official know who the visitor is and whether that person has registered. It is axiomatic, then, that such *713 official must be afforded enough latitude to be able to stop someone on campus and ascertain basic information within the statutory scheme such as who the person is, why he or she is present and whether he or she has registered, if required. Without such authority, the official often would be unable to make a reasonable determination as to whether the outsider is likely to commit a disruption, is a repeat disrupter, or must register and has registered.[4]
The reasonableness of Salas's action must be viewed in this context of restricted access to California's school grounds. Given the above constitutional and statutory scheme, Salas had the right to detain appellant to investigate who he was and why he was on school grounds.
In addition, Salas testified he recognized appellant and knew that appellant was an outsider to Golden West Middle School. He also knew that Fink's encounter with appellant was not satisfactory to Fink as Fink asked Salas to detain appellant, which request was consistent with Salas's observation that appellant appeared to ignore Fink. While it is true that Salas did not know what had been said between Fink and appellant, such actual knowledge was not necessary as Salas knew that Fink was not satisfied with the result. The choices for Salas at this point were either to interrogate Fink, a school official known to Salas, for further information and risk appellant escaping or to accept Fink's conclusion that appellant must be detained. Given this information and choice, Salas was reasonably justified in detaining appellant to see if he was trespassing.
Appellant refused to accede to Salas's request to stop, despite Salas being a uniformed police officer. Instead, appellant was hostile and belligerent. It was reasonable for Salas to view this lack of cooperation on a school campus by an outsider as being an indicator of a lack of legitimate presence, thus justifying an increase in effort to effect detention. Thereafter, as appellant resisted Salas's efforts to detain him, the level of force to effect the detention escalated. Given our recognition that Salas had the right to determine who appellant was and why he was on the school grounds, these escalating efforts at detention were reasonable given appellant's resistance.
Appellant argues that the detaining officer must be able to articulate a specific statute that appellant reasonably appeared to have been violating before detaining him on school grounds. Appellant points to the cross-examination of Salas where it appears that he may have believed that appellant had to register under section 627.2 and that, if so, Salas would have been wrong because classes had ended more than one hour before appellant was encountered. Thus, the argument is that it would not be reasonable to think that the misdemeanor of failure to register was being committed.
We do not read the testimony of Salas to be so limited. Instead, the record establishes that Salas sought to detain appellant because appellant had refused to cooperate with Fink, that Fink asked Salas to detain appellant, and that such detention was reasonably necessary to determine whether appellant was properly on school grounds.
In so concluding, we hold that unlike the rules applicable to public places in general, school officials, including police who assist in maintaining general order on school campuses, need not articulate a specific crime which appears to be violated in order to detain an outsider for the limited purpose of determining the fundamental factors justifying an outsider's presence on a school campus, such as who he is, why he *714 is on campus, and whether he has registered.[5]
It is, of course, well established that "it is the right of every person to enjoy the use of public streets, buildings, parks, and other conveniences without unwarranted interference or harassment by agents of the law. [Citations.]" (In Re Tony C, supra, 21 Cal.3d. at p. 893, 148 Cal.Rptr. 366, 582 P.2d 957, italics added.) When this significant right is balanced against society's general need to prevent crime, the cases have consistently required that in order to justify an investigative stop, the police officer must have specific and articulable facts causing him to suspect that activity relating to crime has taken place or is occurring or is about to occur and that the person to be detained is involved in that activity. (Terry v. Ohio (1968) 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; In Re Tony C., supra, at p. 893,148 Cal.Rptr. 366, 582 P.2d 957.)
This is not to say, however, that persons have unfettered free access to all public places. Indeed, where the nature of a public place or other circumstance so justifies, citizens regularly are subjected to intrusions not appropriate in other places. Thus, for example, visitors to an airport may constitutionally be required to pass through a metal detector. (People v. Hyde (1974) 12 Cal.3d 158, 115 Cal.Rptr. 358, 524 P.2d 830.) This intrusion is justified because airplanes have historically been the subject of criminal activity such as hijacking, and thus reasonable limitations on free access through airports to airplanes are necessary to protect passengers and flight crews and to preserve safe air commerce. (Id. p. at 166, 115 Cal.Rptr. 358, 524 P.2d 830.) The intrusion of a search by metal detector does not require any articulable facts relative to the individuals who are subject to them. (Id. p. at 167, 115 Cal. Rptr. 358, 524 P.2d 830.)
Also analogous are cases holding that random roadblock detentions to spot intoxicated drivers are constitutionally permissible. In Ingersoll v. Palmer (1987) 43 Cal.3d 1321, 241 Cal.Rptr. 42, 743 P.2d 1299, the Supreme Court held that sobriety checkpoint stops are not governed by the standard set forth in In re Tony C. and thus there does not need to be a reasonable suspicion that the detained drivers have or may be involved in criminal activity. Instead, the reasonableness of the detention is determined by balancing the societal need against the invasion involved. Thus, where the societal interest being protected is great and the intrusion is minimal, then the detention is reasonable under the Fourth Amendment. (Ingersoll v. Palmer, supra, at pp. 1327-1330, 241 Cal.Rptr. 42, 743 P.2d 1299.)
People v. Hyde and Ingersoll v. Palmer are founded on a well-established line of federal and California authorities that recognize "administrative searches" as an exception to the general rules regarding searches and seizures in public places. Administrative searches are in furtherance of an administrative purpose (such as air travel safety) rather than simply a criminal investigation seeking to secure evidence of a crime. Administrative searches may unveil evidence of specific criminal behavior, but they also deter criminal behavior by making it harder for would-be criminals to position themselves so as to commit crimes. (People v. Hyde, supra, 12 Cal.3d at pp. 165-166, 115 Cal.Rptr. 358, 524 P.2d 830, and cases cited therein.)
California's constitutional mandate and legislative scheme relative to school safety render the schools akin to those places and situations in which the courts have recognized that "administrative searches" are *715 permissible.[6] Our Legislature has determined that it is appropriate to require visitors during school hours to register and disclose their name, address, occupation, and purpose of visit. Such registration would not be justified on a public street, but is quite reasonable given the constitutional "inalienable right [of students] to attend campuses which are safe, secure and peaceful" (Cal. Const., art. I, § 28, subd. (c)), and the legislative finding that "a disproportionate share" of crimes on campuses are committed by outsiders (§ 627, subd. (c)). Indeed, such registration both allows for the administrative control of school grounds and serves as a deterrent to those who would otherwise enter the school grounds with criminal design.
The fact that the statutory registration requirements are limited to "school hours" (§ 627.2), which is defined as one hour before and one hour after classes end (§ 627.1 subd. (c)), does not indicate that the need to identify visitors and their purposes is limited to that period of time. The legislative finding relative to the problems caused by outsiders is not limited to any time period, and school officials are authorized to compel outsiders who have no legitimate purpose and reasonably appear actually or likely to be disruptive to leave school grounds regardless of "school hours." (§§ 626.7, 626.8.) Indeed, it would be irrational to conclude that the dangers posed by outsiders would significantly diminish outside of "school hours." Certainly many crimes are more likely to be perpetrated when there are fewer rather than more people around. Thus, the "school hours" limitation on registration can only be seen as defining how long school officials should be available to register visitors and not as a legislative limitation on the dangers defined by section 627.
In concluding that the constitutional mandate for safe education and the wide scope of the legislative protections afforded on school grounds cannot "trump" the Fourth Amendment (dis. opn., post, at p. 719), the dissenting opinion fails to distinguish between permissible intrusions during "school hours" and those at other times. The registration requirements of section 627.2, apply only to "school hours" and require fairly substantial intrusion. Visitors must detour from their intended destinations on campus and provide the administration with detailed personal information including name, address, occupation, proof of age, purpose of visit and "[o]ther information consistent with the purposes of this chapter and with other provisions of law." (§ 627.3.) Given that neither the legislative findings of section 627 nor logic support a conclusion that the threat of criminal activity from outsiders is greater during "school hours" than at other times, the dissent's reliance on section 627.1 is inconsistent with its rejection of the right of a school official or police officer to detain an outsider for the limited purposes described above.[7]
*716 Indeed, as this case clearly demonstrates, it is illogical to tie the constitutionality of minimal intrusions on visitors to artificial time parameters. Here, had the appellant been observed approximately 20 minutes earlier, i.e., within an hour of the end of classes and thus within "school hours," then he would have had to register and, presumably under the dissent's view, he could have properly been detained to determine if he had done so. Given that there is no legislative finding, factual matter in the record, or other basis to justify such divergent results, we do not accept the dissent's reliance upon a distinction that is based upon "school hours."
Accordingly, we conclude that school officials, or their designees, responsible for the security and safety of campuses should reasonably be permitted to detain an outsider for the limited purpose of determining such person's identity and purpose regardless of "school hours."
The issue presented is whether Salas was acting lawfully in the performance of his duties when he attempted to detain appellant. Because we find that Salas could properly detain appellant to determine whether he was permissibly present on campus, there was sufficient evidence to conclude that Salas was acting lawfully in the performance of his duties, an element of the offenses of battery on and resisting a police officer. Thus, there was sufficient evidence to support the juvenile court's finding that appellant violated section 243, subdivision (b), or section 148, subdivision (a).

C. Simple Battery

Appellant contends there is insufficient evidence of a battery because he was justified in resisting Salas's excessive use of force. He argues that Salas exerted excessive force by attempting to grab him, when he refused Salas's commands to stop, and by applying a wristlock. Therefore, he argues, his ensuing struggle was only such force as was reasonable to defend himself.
Even if a detention were unlawful, a person may not use force or violence to resist it unless the police officer effectuated the unlawful detention by excessive, i.e., unreasonable, force. (People v. Curtis (1969) 70 Cal.2d 347, 357, 74 Cal.Rptr. 713, 450 P.2d 33, disapproved on another point in People v. Gonzalez, supra, 51 Cal.3d at p. 1222, 275 Cal.Rptr. 729, 800 P.2d 1159; People v. White (1980) 101 Cal.App.3d 161, 166, 161 Cal.Rptr. 541.) The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, not by the 20/20 vision of hindsight. The inquiry is an objective one: Was the officer's action objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation? (Martinez v. County of Los Angeles (1996) 47 Cal. App.4th 334, 343, 54 Cal.Rptr.2d 772.) It is a pure question of fact whether a police officer used reasonable force in detaining a defendant, so reviewing courts determine if there is sufficient evidence in the record for a reasonable trier of fact to conclude that the force used in effectuating a detention was reasonable. (People v. Delahoussaye (1989) 213 Cal.App.3d 1, 8, 261 Cal. Rptr. 287.)
Here, Salas attempted to grab appellant and apply a wristlock only after Fink sought his aid and appellant refused his requests to stop. His attempted restraint did not involve a weapon or infliction of bodily harm. (See In re Ramon T. (1997) 57 Cal.App.4th 201, 206, 66 Cal. Rptr.2d 816 [no excessive force when officer puts arm around defendant's chest but causes no distress or facial discoloration].) Although appellant moved to dismiss the charges against him on the ground Salas lacked objectively reasonable grounds to detain him, he neither moved nor argued that Salas applied excessive force in effectuating the detention.
The circumstances of the detention provide sufficient evidence to support the juvenile court's implied finding that Salas *717 did not use excessive force. Thus, there was sufficient evidence presented to the trial court to sustain a finding that appellant committed a simple battery (§ 243, subd. (a)), thereby justifying his probation.

II[**]

DISPOSITION
The orders appealed from are affirmed.
STEVENS, J., concurs.
Concurring and Dissenting Opinion of JONES, P.J.
I would reverse the finding that appellant committed a battery on a police officer (Pen.Code,[1] § 243, subd. (b)) and violated section 148, subdivision (a)(1) (resisting arrest). In my view, there is insufficient evidence that Officer Robert Salas was acting lawfully at the time of the offense. Specifically, there were insufficient facts to justify detaining appellant. However, even if appellant's detention was unlawful, he may be guilty of a simple battery, as the majority explains, where sufficient evidence supports the trial court's implied finding that Officer Salas did not use excessive force in effectuating the detention. I concur in this analysis, and with my colleagues' analysis of appellant's challenge to the gang-related conditions of his probation.

I.

Reasonable Suspicion of Criminal Activity

a. Specific Penal and Education Code Violations
The majority finds the detention of appellant lawful by characterizing it as "analogous to an `administrative search'" (Maj. opn., ante, at p. 715, fn. 6) and therefore a permissible intrusion to foster the goal of deterring criminal conduct on school property. Additionally, the majority concludes appellant's detention was justified under traditional Fourth Amendment analysis. (Maj. opn., ante, at p. 715, fn. 6.) I cannot subscribe to either conclusion.
The stated purpose of the statutes requiring outsiders to register during school hours (see maj. opn., ante, at pp. 711-712 ) is to safeguard school personnel and property against criminal activity by outsiders (§ 627). Had the Legislature believed a longer registration period was appropriate to effectuate the statute's purpose, it presumably would have defined "school hours" differently.
On this record there is no evidence to draw a reasonable inference that appellant was violating section 627.2 or section 627.7 when Salas saw him on the middle school campus. Salas testified that the middle school "gets out," i.e., "the bell rings, and all the students start leaving the school and leaving the campus" at 1:40 p.m. However, Salas did not see appellant until sometime between 3:00 p.m. and 3:10 p.m., more than 20 minutes after the conclusion of statutory "school hours" at this middle school. Although Salas testified that "other activities" occur between 1:40 p.m. and shortly after 3:00 p.m., there was no evidence that "other activities" included a continuation of classes. Furthermore, Salas knew that classes at appellant's high school end at 2:40 p.m., and appellant testified that he was on the middle school grounds at approximately 3:00 p.m., "on [his] way home ... out of school ... [high] school was over." The reasonable inference from appellant's testimony is that he left his school when classes ended at 2:40 p.m., and there is no evidence to the contrary. Under these facts, there can be no reasonable inference that appellant was on the middle school grounds before 2:40 p.m., i.e., during middle school "school hours."
Additionally, Salas and appellant both testified that appellant was in the parking lot at the school's perimeter walking in a *718 direction to leave the school grounds when Salas confronted him, which was within two minutes of appellant's encounter with Fink. Thus, even though by statute appellant was not required to register to be on the school grounds at that hour, he was promptly complying with instructions to leave the school grounds. Taking this factual scenario as a whole, Salas lacked an objectively reasonable basis to detain appellant on suspicion of violating the pertinent statutes that forbid nonstudents from being on a school campus during school hours without registering or refusing to leave the campus when requested to do so by the appropriate authority.
Nor was there evidence that appellant's conduct violated sections 626.7 or 626.8. Under section 626.7, a designated school officer, like Salas, may direct a person who is not a student or employee at the school to leave the campus if "it reasonably appears" to the designated officer that the person is committing any act likely to interfere with the peaceful conduct of the activities of the campus, or has entered the campus for the purpose of committing any such act. As construed in the identical statute governing public colleges and universities (§ 626.7), "reasonably appears" infuses into the statute "`... the objective standard of a reasonable man having to have "reasonable cause to believe" that an act interfering with the peaceful conduct of the institution's activities is being committed. [¶] ... The criterion is not what subjectively appears reasonable to the [officer] whose decision is in question, but what would appear to a reasonable man in the [officer's] situation to be reasonable.... Therefore, [the statute protects] against ouster upon the personal whim or arbitrary judgment of [an officer] charged with maintenance of order on a campus....'" (People v. Agnello (1968) 259 Cal.App.2d 785, 791-792, 66 Cal.Rptr. 571.)
Under section 626.8, a nonstudent who enters any school grounds without lawful business thereon, and "whose presence or acts interfere with the peaceful conduct of the activities of the school or disrupt the school or its pupils or school activities" is guilty of a misdemeanor if he remains on the grounds after being asked to leave by a designated school officer. For purposes of section 626.8, "lawful business" is defined as "a reason for being present upon school property which is not otherwise prohibited by" statute, ordinance, or by any regulation adopted pursuant to statute or ordinance. (§ 626.8, subd. (c)(2).)
Nothing on this record implies appellant was on the middle school campus to interfere with the peaceful conduct of campus activities. When first seen by Salas and John Fink, appellant and his friend Raymond G. were in an exterior area of the campus, and when Salas reached them several minutes later, they were in the parking lot walking away from the campus. There was no evidence that either appellant or Raymond was creating a disturbance or was known to have created previous disturbances on the campus, e.g., by disrupting a sporting event, harassing younger children, playing music at extreme volume, or by more troubling conduct such as vandalizing school property, possessing or distributing contraband, or brandishing a weapon.
Furthermore, there was no evidence appellant lacked lawful business on the middle school campus, i.e., that his mere presence thereon violated a law. Education Code section 32211, the parallel statute to section 627.7 making a nonstudent's failure to register during school hours a misdemeanor, provides that nothing therein "shall be construed as preempting any ordinance of any city, county, or city or county." (Ed.Code, § 32211, subd. (g).) However, there was no evidence that the City of Fairfield or Solano County enacted an ordinance that extended section 627.1, subdivision (c)'s definition of school hours to a time later than one hour after classes end or any other ordinance restricting the presence of nonstudents on middle school campuses generally or the particular areas *719 of this campus where Fink and Salas saw appellant.[2]

b. Reasonable Mistake of Law
Appellant's detention cannot be justified by the fact that Salas mistakenly believed a nonstudent was required to register even when "school hours" were concluded. "Courts on strong policy grounds have generally refused to excuse a police officer's mistake of law. [Citation.]" (People v. Teresinski (1982) 30 Cal.3d 822, 831, 180 Cal.Rptr. 617, 640 P.2d 753.) Teresinski stated that finding the officer's mistake of law reasonable under the circumstances "would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce...." (Id. at p. 832, 180 Cal.Rptr. 617, 640 P.2d 753.)
Detentions based on a mistake of law have been upheld, but only when the detaining officer's misunderstanding of the law was objectively reasonable. (People v. Glick (1988) 203 Cal.App.3d 796, 802, 250 Cal.Rptr. 315 (Glick) [mistaken interpretation of New Jersey vehicle registration laws reasonable]; People v. Lopez (1987) 197 Cal.App.3d 93, 101, 242 Cal.Rptr. 668 [mistaken interpretation of California open container laws unreasonable]; In re Arthur J. (1987) 193 Cal.App.3d 781, 787, 238 Cal.Rptr. 523 [mistaken understanding of local curfew ordinance unreasonable].)
In Glick, a six-year veteran officer detained a car on the grounds its New Jersey license plates did not display registration tags because he believed New Jersey, like California, required registration stickers. The officer had previously stopped at least 75 out-of-state cars from nine states for faulty registration, every one of which require registration stickers on license plates. (Glick, supra, 203 Cal.App.3d at pp. 799, 803, 250 Cal.Rptr. 315.) New Jersey does not require such stickers. We concluded the officer's mistake of law was reasonable: an officer cannot realistically be expected to know the registration laws of all 50 states; proportionally few New Jersey vehicles visit California; this officer had never before encountered a New Jersey vehicle; and in his experience the statutes of other states comport with California's. We noted, however, that a different outcome might be required were the vehicle from a contiguous state or if that state's motorists routinely drove on California roads, e.g., a highway patrol officer posted in the Lake Tahoe area would reasonably be expected to be familiar with Nevada registration laws. (Id. at pp. 803-804, 250 Cal.Rptr. 315.)
Salas's position is akin to Glick's hypothetical Tahoe highway patrol officer. As the liaison officer between the police department and the district, he would be expected to have particular familiarity with the statutes governing activities on school premises. Under the circumstances his mistake of law was not reasonable.

c. Non-specific Criminal Activity
Illinois v. Wardlow (2000) 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (Wardlow), does not support the People's argument that appellant's flight, confrontational behavior, and lack of cooperation provided reasonable suspicion of criminal activity. In Wardlow, a four police car caravan converged in an area known for heavy narcotics trafficking. An officer in the fourth car observed the defendant standing next to a building holding an opaque bag. The defendant looked in the officer's direction, then ran through a gangway and alley. The officer, in his car, eventually cornered the defendant on the street, exited his car, *720 detained the defendant, and found a handgun and ammunition during a pat down. (Id. at pp. 675-676.) Wardlowconcluded that, although "flight is not necessarily indicative of ongoing criminal activity," the officer was justified in suspecting defendant's involvement in criminal activity based on the entire context of his "unprovoked" "headlong" flight. (Id. at pp. 676, 677.)
The instant facts are significantly distinguishable. Appellant was not in a high crime area, there was no evidence he was holding an object that could have contained contraband, and he did not immediately bolt down an alley away from Salas when Salas first called to him. He simply continued walking in the direction he was already proceeding. If these facts were sufficient to constitute a "flight" that reasonably justified a stop, the "temporary detention of anyone who flees at the mere sight of a police officer" would be justified, which is not Wardlow'sholding. (Wardlow, supra, at p. 677 (cone. opn. of Stevens, J.).) As Wardlowobserved, when an officer, without reasonable suspicion, approaches an individual, the individual has the right to ignore the police and go about his business. "[A]ny `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention....' [Citation.]" (Id. at p. 676.) Moreover, there was no evidence that Assistant Principal Fink communicated to Salas any suspicion of unlawful conduct by appellant other than a possible trespass. As discussed, there was no evidence on this record of a trespass because there was no evidence of a local ordinance or rule forbidding nonstudents on the school's premises after school hours.
Without evidence that Salas had an objective basis to detain appellant, there was insufficient evidence he was acting lawfully in the performance of his duties. Therefore, there was insufficient evidence to support the juvenile court's finding that appellant violated section 243, subdivision (b) or section 148, subdivision (a)(1). The only possible valid finding is that appellant committed simple battery (§ 243, subd. (a); People v. Curtis (1969) 70 Cal.2d 347, 355-356, 74 Cal.Rptr. 713, 450 P.2d 33 (Curtis; Evans v. City of Bakersfield (1994) 22 Cal.App.4th 321, 331, 27 Cal.Rptr.2d 406; People v. White (1980) 101 Cal. App.3d 161, 166, 161 Cal.Rptr. 541 (White)).

II.

Regulatory Scheme Based on Public Safety
The majority's reliance on the cited provisions in our state Constitution, Education Code and Penal Code do not, in my view, trump Fourth Amendment protections by creating a broad "special needs" administrative search and seizure exception at public schools, to justify an otherwise unlawful unconsented investigative stop of this one visitor. Administrative "special needs" stops or searches have been upheld against a Fourth Amendment challenge without individualized suspicion where the primary purpose of the procedure is to promote public safety by deterring conduct potentially injurious to persons and property. (See, e.g., Ingersoll v. Palmer (1987) 43 Cal.3d 1321, 1327-1328, 1331, 241 Cal. Rptr. 42, 743 P.2d 1299 (Ingersoll).) Such stops are based on a regulatory plan embodying explicit, neutral limitations on the conduct of individual officers, which is necessitated because a more rigorous standard of suspicion is unworkable to prevent or deter the dangerous conduct. (People v. Banks (1993) 6 Cal.4th 926, 936, 25 Cal.Rptr.2d 524, 863 P.2d 769, citing Ingersoll, supra, at p. 1329, 241 Cal.Rptr. 42, 743 P.2d 1299; Brown v. Texas (1979) 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357.) The reasonableness of the special needs administrative stop, for purposes of Fourth Amendment compliance, is assessed by applying a balancing test that weighs the gravity of the governmental interest or public concern served and the degree to which the regulatory plan advances that concern against the intrusiveness of the *721 interference with individual liberty. (Ingersoll, supra, 43 Cal.3d at p. 1338, 241 Cal.Rptr. 42, 743 P.2d 1299.) Hence, sobriety checkpoints to prevent drunk driving, where motorists are randomly stopped according to a neutral formula, such as every fifth driver, do not violate the Fourth Amendment. (See People v. Banks, supra, 6 Cal.4th at p. 936, 25 Cal. Rptr.2d 524, 863 P.2d 769.) Nor, in order to protect school personnel, does subjecting all students who are late for class to a weapons search with a hand-held metal detector (see In re Latasha W. (1998) 60 Cal.App.4th 1524, 1527, 70 Cal.Rptr.2d 886) or, in order to prevent hijacking, does requiring all airplane passengers to pass through a magnetometer (see People v. Hyde (1974) 12 Cal.3d 158, 166, 115 Cal. Rptr. 358, 524 P.2d 830). In this case, there is no evidence of the adoption of a school district or campus-wide stop and/or search scheme based on predetermined specified neutral criteria beyond those in effect under the aforementioned provisions of the Penal and Education Codes. No witness articulated a concern for, or problem with, after-class hours security or safety on the school premises so great as to justify this detention in the absence of an individualized suspicion of wrongdoing.
Implicit in the majority's weighing of the "risk [of] appellant escaping [Salas's query]" (Maj. opn., ante, at p. 713) is a presumption that Salas had a reasonable suspicion to justify the stop. He did not, because the fact giving rise to Salas's stop-"[knowing] Fink's encounter with appellant was not satisfactory to Fink"-was insufficient to initiate an investigative stop under In re Tony C. (1978) 21 Cal.3d 888, 893, 148 Cal.Rptr. 366, 582 P.2d 957. As offensive as appellant's subsequent disrespectful outburst of profanity may have been, it does not elevate the existing circumstances into a reasonable suspicion that criminal activity was afoot. Accordingly, I would reverse the findings on the section 243, subdivision (b) and section 148, subdivision (a)(1) charges.
NOTES
[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, part II of this opinion is not certified for publication.
[*] Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[2] All undesignated section references are to the Penal Code.
[3] The entirety of the findings contained in section 627 state: "(a) The Legislature finds the following: [¶] (1) Violent crimes perpetrated on public school grounds interfere with the education of students and threaten the health and safety of teachers, other employees, and students. [¶] (2) Many serious crimes of violence are committed on school grounds by persons who are neither students nor school employees and who are not otherwise authorized to be present on school grounds, [¶] (3) School officials and law enforcement officers, in seeking to control these persons, have been hindered by the lack of effective legislation restricting the access of unauthorized persons to school grounds and providing appropriate criminal sanctions for unauthorized entry. [¶] (b) The Legislature declares that the purpose of this chapter is to safeguard the teachers, other employees, students, and property of public schools. The Legislature recognizes the right to visit school grounds for legitimate nonviolent purposes and does not intend by this enactment to interfere with the exercise of that right. [¶] (c) The Legislature finds and declares that a disproportionate share of crimes committed on school campuses are committed by persons who are neither students, school officials, or staff, and who have no lawful business on the school grounds." This shows that the Legislature considers school safety to be a serious problem.
[4] School officials are also charged with a tort duty to "`supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]' [Citations.]" (Dailey v. Los Angeles Unified Sch. Dist. (1970) 2 Cal.3d 741, 747, 87 Cal.Rptr. 376, 470 P.2d 360.)
[5] The Second District Court of Appeal recently held that a school official can reasonably detain a student who the school official reasonably believes has engaged in or will engage in a violation of school rules as opposed to criminal activity. (In re Randy G. (2000) 80 Cal.App.4th 1448, 1453, 96 Cal.Rptr.2d 338, petn. for review pending, petn. filed July 10, 2000, order for grant or denial of review due Sept. 9, 2000, S089733.)
[6] We say "akin" because three concurring Justices in People v. Hyde agreed that metal detector searches at airports were reasonable but took issue with affixing the label "administrative search" on the intrusion. Those three Justices found the searches reasonable under traditional Fourth Amendment balancing of the magnitude of the societal purpose with the scope of the intrusion. (People v. Hyde, supra, 12 Cal.3d at pp. 170-179, 115 Cal.Rptr. 358, 524 P.2d 830, cone. opn. of Wright, C.J.) We conclude that either as analogous to an "administrative search" or under traditional Fourth Amendment analysis, the detention of appellant was justified.
[7] Of course, this inconsistency could be resolved by holding that all intrusions on visitors to school grounds must be based on an articulable suspicion consistent with In re Tony C., supra, 21 Cal.3d at p. 893, 148 Cal. Rptr. 366, 582 P.2d 957, thereby subordinating California's constitutional right to safe schools and rendering schools public thoroughfares. Such a result cannot be justified given the innate importance of our educational institutions and the findings of section 627 that substantial criminal activities are being committed by outsiders on school grounds.
[**] See footnote 1, ante.
[1] Unless otherwise indicated, all further section references are to the Penal Code.
[2] In re Randy G. (2000) 80 Cal.App.4th 1448, 96 Cal.Rptr.2d 338 (petn. for review pending, petn. filed July 10, 2000, time for grant or denial of review due Sept. 9, 2000), which also involved a detention on school property, is inapposite to the facts of this case insofar as, unlike here, the defendant was a student at the school detained during school hours. The justification for the detention in Randy G., however, was based on the same objective criteria employed in determining the legitimacy of any stop [a reasonable suspicion of a violation of proscribed activity].