Filed 2/11/14  In re G.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>G.B.,<br><br>        Defendant and Appellant. | E058926<br><br>(Super.Ct.No. INJ1200530)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Randall Donald White, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

The juvenile court found true an allegation defendant G.B. (minor) resisted arrest (¶ 2 -- Pen. Code, § 148, subd. (a)).[1] The court adjudged minor a ward of the court and placed him on probation. On appeal, minor contends insufficient evidence supports the true finding. We affirm.

FACTUAL AND PROCEDURAL HISTORY

On October 9, 2012, the People filed the initial Welfare and Institutions Code section 602 petition alleging minor had obstructed or resisted a peace officer in the performance of his duties (¶ 1 -- § 69). Minor admitted the allegation. The juvenile court placed minor on delayed entry of judgment (DEJ) for a period not to exceed three years. The court released minor to his parents on various terms and conditions.

On January 31, 2013, the People filed a petition subsequent alleging minor had committed burglary (¶ 1 – 459), theft of personal property not exceeding $950 (¶ 2 – § 490.5), and false identification to a police officer (¶ 3 – § 148.9, subd. (a)). Pursuant to a negotiated disposition, minor admitted the allegations in paragraphs 1 and 2, the allegation in paragraph 3 was dismissed, and minor was continued on DEJ.

On March 6, 2013, the People filed an additional petition subsequent alleging minor had obstructed or resisted a police officer in the performance of his duties (¶ 1 – § 69) and had resisted arrest (¶ 2 – § 148, subd. (a)). At the contested hearing on the petition, Desert Hot Springs Police officer Larry Essex testified that on March 4, 2013, at 7:30 a.m., he was dispatched to provide backup to another officer who was chasing a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

suspect through the desert.

Essex attempted to place himself in the path in which the suspect ostensibly was fleeing. The pursuing officer radioed that the suspect was fleeing towards a park. Essex responded to the park. At that point, the only description of the suspect Essex had received was that he was wearing a black shirt. Essex exited his patrol vehicle and started heading into the desert, hiking a trail which went up a hill north of the park.

As Essex reached the crest of the first hill, he noticed minor on top of the next hill approximately 100 yards away. Minor was the only other person Essex could see in the area. Essex told minor to come to him; minor sat down on a rock. Essex then continued hiking towards minor so that he could get close enough to engage minor in conversation. Essex asked minor his name; minor said he did not have to tell Essex his name and asked why Essex wanted to know.

Essex told minor he was looking for someone. Minor asked Essex for whom he was looking. Essex told minor he did not need to answer minor's question. Essex told minor he needed to find out who minor was in order to ensure he was not the individual for whom he was searching. Minor got up and started walking across the ridge line of the hill towards the park. Essex again asked minor his identity; minor ignored him.

Essex still had no physical description of the suspect other than that he was wearing a black shirt. Although there was police radio traffic occurring regarding the suspect, Essex missed much of the substance of it due to his interactions with minor. Minor had been yelling at Essex. Minor was wearing a black sweatshirt and a red beanie.

Essex called dispatch to ask if the suspect was wearing a red beanie; he heard dispatch respond the suspect was wearing a black shirt and maroon pants.

Essex continued to inform minor he needed to determine whether minor was the individual for whom he was looking. Minor continued to refuse Essex's requests. Essex told minor to stop. Minor continued walking. Essex then told minor he was being detained. Essex grabbed minor's sweatshirt and told him to stop in an attempt to detain him in order to determine whether he was the suspect. Essex believed he had reasonable suspicion to detain minor because minor was the only person in the area in which he was dispatched to find the suspect.

As Essex grabbed minor's sweatshirt, minor turned around and swung at Essex's face but missed. Essex grabbed hold of minor with both hands and repeatedly told him not to resist. Minor said "'I'm not resisting. I'm not doing anything wrong.'" Essex told minor he was under arrest. Essex placed a handcuff on one of minor's wrists, but minor managed to pull away from him before he could affix the other. After a brief struggle, Essex was able to place the handcuffs on both minor's wrists.

Essex began walking minor towards his patrol vehicle. Minor pushed and pulled Essex in an attempt to break free of Essex's grasp. As they continued walking toward the car, minor stopped several times; Essex had to urge minor to continue walking. Once they reached the car, minor refused to get in. Once minor sat down in the car, he refused to put his legs inside. Essex suffered "some little scratches on" his hand from the struggle.

4

Minor testified he was wearing a gray sweatshirt and green pants. The defense introduced evidence that radio chatter occurring during Essex's interaction with minor described the suspect as a white male juvenile by the name of Cory B., who was wearing maroon pants and a black shirt.[2] Minor is Black.[3] The court found not true the allegation in paragraph 1.

DISCUSSION

Minor contends insufficient evidence supports the court's true finding on paragraph 2 because Essex had no reasonable suspicion to detain minor. We disagree.

"'The standard of appellate review for determining the sufficiency of the evidence is settled. On appeal, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation.] In conducting such a review, we "'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" [Citations.] "Conflicts

---

[2] Defense counsel introduced into evidence a recording of the radio dispatch exchange during the incident, which he played during the hearing; a police event record report of the incident; and a transcript of the audio dispatch recording. None of the exhibits appear in the record and neither counsel on appeal has requested they be transferred to this court. Portions of those exhibits appear in and are attached to defendant's reply to the opposition to his motion to suppress evidence below. We rely on these portions for some of our factual recitations.

[3] No unequivocal affirmative evidence was adduced *on the record at the hearing* that minor is Black. However, from a reading of the record as a whole, it is clear this was obvious to everyone at the hearing.

and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." [Citation.]'" (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

The legal elements of resisting arrest "are as follows: '"(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."' [Citation.]" (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894-895.) "[T]he lawfulness of an arrest is an essential element of the offense of resisting or obstructing a peace officer. [Citation.] If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a). [Citations.]" (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1409.)

"It is, of course, well established that 'it is the right of every person to enjoy the use of public streets, buildings, parks, and other conveniences without *unwarranted* interference or harassment by agents of the law. [Citations.]' [Citation.] When this significant right is balanced against society's general need to prevent crime, the cases have consistently required that in order to justify an investigative stop, the police officer must have specific and articulable facts causing him to suspect that activity relating to

6

crime has taken place or is occurring or is about to occur and that the person to be detained is involved in that activity. [Citations.]" (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 986.)

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [United States Supreme Court case law] recognizes that it may be the essence of good police work to adopt an intermediate response. [Citation.] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Citations.]" (*Adams v. Williams* (1972) 407 U.S. 143, 145-146.)

Here, Essex's demand that minor identify himself was not an unwarranted interference or harassment of minor. Essex had been dispatched to the precise area in which he found minor in order to search for a suspect being pursued by another officer. According to Essex's testimony, the only description he had of the suspect was that he was wearing a black shirt. Minor was wearing a black sweatshirt. Although a later description of the suspect radioed to Essex conflicted with minor's appearance, Essex testified he did not hear all the radio traffic because he was interacting with minor. By finding the allegation against minor true, the court necessarily found Essex's testimony credible. On appeal, we do not reweigh credibility determinations.

When Essex encountered him, minor was wearing a black sweatshirt and a red beanie. A later description of the suspect which Essex did hear indicated the suspect

apparently was not wearing a red beanie. However, a beanie is easily put on or pulled off. Likewise, any discrepancy in the color of pants minor was wearing as compared to those worn by the suspect could easily be the result of a misdescription by the pursuing officer. Essex encountered one individual, minor, in a black sweatshirt in a remote location in the precise area in which a suspect had been reported fleeing, wearing a black shirt. Essex's attempt to identify minor so that he could determine whether minor was the suspect was warranted under the circumstances. Thus, Essex's detainment of minor was within the performance of Essex's duties. Substantial evidence supports the juvenile court's true finding that minor resisted arrest.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____<br>J.

We concur:

HOLLENHORST_____<br>         Acting P. J.

McKINSTER_____<br>         J.