Filed 2/11/16  P. v. Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H042039 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS142204A) |
| v. | |
| IVAN GALAN CRUZ, | |
| Defendant and Appellant. | |

## INTRODUCTION

After the trial court denied his motion to suppress evidence, defendant Ivan Galan Cruz pleaded guilty to a felony count of possessing a knife on school grounds (Pen. Code, § 626.10, subd. (a)(1))[1] and a misdemeanor count of possessing marijuana at school (Health & Saf. Code, § 11357, subd. (d)).  The trial court suspended imposition of sentence and placed defendant on formal probation for three years.

On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence pursuant to section 1538.5.  For the reasons stated below, we conclude the trial court properly denied the motion to suppress and affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Evidence at the Motion to Suppress*

### A. Testimony of David Duffield

Around noon on August 19, 2014, David Duffield, a teacher at Monterey High School, noticed defendant sitting on a loading dock near a girl's locker room on campus. Duffield approached defendant and asked him why he was not in class. Defendant responded that he had an "open block," which meant he had no class that period. Duffield knew that there were no "open blocks" at that time of day. He believed that defendant was lying. Duffield escorted defendant to the front office to see the attendance coordinator. On the way to the office, defendant told Duffield that he was a graduate of Seaside High School, another school in the area.

Duffield testified that Monterey High School was fenced in with signs at all entrance points, informing all visitors of the requirement to register at the front office. Visitors were required to wear a sticker. However, defendant was not wearing a visitor's sticker at the time of the encounter.

### B. Testimony of Officer Michael Garcia

Monterey Police Officer Michael Garcia was working as a resource officer when Duffield brought defendant into the front office. Duffield explained to the officer that he saw defendant out of class and that defendant lied about being a student at the school. Defendant told the officer his name and explained that he was at Monterey High School to meet his girlfriend. Defendant also told the officer that he was 18 years old and that he was a graduate from Seaside High School. Officer Garcia asked defendant for identification, but defendant was unable to produce any.

Officer Garcia called the resource officer for Seaside High School to gather more information about defendant, and he also checked an online student database for defendant's name. Officer Garcia testified that at the time, he intended to find out why defendant was actually at Monterey High School. He noted that there were some

2

instances where an outsider would come on campus and lie about why he or she was on campus. He was also aware that former students would come on campus to sell marijuana or to participate in "gang activity." Given these past experiences, Officer Garcia had suspicions that defendant was being untruthful about why he was on campus.

The Seaside High School resource officer informed Officer Garcia that he had contact with defendant in the past for marijuana sales. Based on this information, Officer Garcia asked defendant if he had any weapons or drugs on his person. Defendant initially denied having drugs or weapons, but then admitted that he had a knife in his backpack. Officer Garcia searched defendant's backpack and found a knife, which was approximately nine inches in length and three inches in width. Thereafter, the officer placed defendant under arrest. After the arrest, Officer Garcia conducted a search of defendant's person and found marijuana in his pants pocket.

### C. Defendant's Testimony

Defendant testified that he was on school grounds waiting for his girlfriend, who was a student at Monterey High School. After Duffield escorted him to the office, Officer Garcia questioned him about his name and his purpose for being on campus. Defendant gave the officer his true name and told him that he was waiting for his girlfriend. Defendant overheard Officer Garcia speak to the Seaside High School resource officer. He heard Officer Garcia refer to him as "Ivan Chavez," misstating his last name. After the phone call, Officer Garcia asked defendant whether he was involved with any prior sales of marijuana, and defendant denied any involvement. Thereafter, the officer asked whether defendant had any weapons or drugs in his backpack. Defendant responded that "there may be a knife in my bag." The officer then searched the backpack.

3

## 2. *The Charges*, *Motion to Suppress*, *Plea*, *and Sentence*

The district attorney charged defendant with felony possession of a weapon on school grounds (§ 626.10, subd. (a)(1); count 1) and misdemeanor possession of marijuana 28.5 grams or less at school (Health & Saf. Code, § 11357, subd. (d); count 2).

On October 31, 2014, the trial court held a hearing on the motion to suppress. At the conclusion of the hearing, the court requested further briefing on the Fourth Amendment issues. On December 11, 2014, after receiving additional briefing, the trial court denied the motion to suppress. The court reasoned, "the heightened security interest of the school, not just for the purpose of registration but to make sure the student is going to be safe before you let somebody who I'll call it a trespasser on campus without being registered. I think before you let them walk off, you need to be sure what their purpose is. And the officer asked, after he called the Seaside officer, [']Do you have any dope or weapons?['] And the defendant's spontaneously says, [']There's a knife in the backpack.['] And then he went on to say, [']May or may not be.['] [¶] And so I view this as if it was the detention. It was clearly not arbitrary and egregious. And it was for the purpose of ensuring the students on the campus are going to be safe if this individual walked off the campus having not registered in the first place."

After the denial of the motion to suppress, defendant pleaded guilty to possessing a knife on school grounds and possessing an ounce or less of marijuana on school grounds. The trial court suspended imposition of sentence, placed defendant on formal probation for three years, and imposed various fines and fees. The trial court sentenced defendant to 90 days in county jail with the possibility to participate in the electronic monitoring program.

### DISCUSSION

Defendant asserts that the trial court erred in denying his motion to suppress because the detention was prolonged and because a search warrant was required prior to a search of his backpack.

4

## 1. *Standard of Review*

" ' "An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 255.)

## 2. *Fourth Amendment Principles in the Public School Context*

The Fourth Amendment to the United States Constitution prohibits all unreasonable searches and seizures. (*United States v. Ross* (1982) 456 U.S. 798, 825.) "The touchstone of analyzing a detention, or for that matter any Fourth Amendment issue, is reasonableness." (*People v. Foranyic* (1998) 64 Cal.App.4th 186, 188.) "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250.)

Although an individual's Fourth Amendment protections and the right to privacy extend to searches and seizures on a school campus (see *New Jersey v. T.L.O.* (1985) 469 U.S. 325, 339), " '[s]pecial needs' exist 'in the public school context.' " (*In re Randy G.* (2001) 26 Cal.4th 556, 565 (*Randy G.*).) "The need of schools to keep weapons off campuses is substantial. Guns and knives pose a threat of death or serious injury to students and staff." (*In re Latasha W.* (1998) 60 Cal.App.4th 1524, 1527.) Furthermore, the California Constitution, article I, section 28, subdivision (c), provides that students

5

and staff of public schools have "the inalienable right to attend campuses which are safe, secure and peaceful."

Because of the special needs of schools, "strict application of the principles of the Fourth Amendment as used in criminal law enforcement matters does not appropriately fit the circumstances of the operation of the public schools." (*In re Sean A*. (2010) 191 Cal.App.4th 182, 186.) Thus, our Supreme Court has held that a school official may detain a student in order to conduct an investigation without any reasonable suspicion, so long as the detention was "not arbitrary, capricious, or for the purposes of harassment." (*Randy G.*, *supra*, 26 Cal.4th at p. 567.) Furthermore, searches of students on campus by a school official require only a reasonable suspicion, rather than probable cause, that the student engaged or has engaged in illegal activity. (*In re William G.* (1985) 40 Cal.3d 550, 564 (*William G.*).)

Our courts have equally applied these relaxed standards to searches and seizures on non-student visitors. (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 986 (*Joseph F.*); *In re Jose Y.* (2006) 141 Cal.App.4th 748, 752 (*Jose Y.*).) In doing so, the courts reasoned that such application was consistent with the legislative finding that " '[m]any serious crimes of violence are committed on school grounds by persons who are neither students nor school employees and who are not otherwise authorized to be present on school grounds.' [(§ 627, subd. (a)(2).)]" (*Joseph F.*, *supra*, at p. 983, fn. 3; *Jose Y.*, *supra*, at p. 752.)

### 3. *The Detention Was Not Prolonged*

Although defendant does not dispute that the initial detention by Duffield was justified to determine defendant's identity and purpose for being on school grounds, he argues that the length of the detention exceeded the scope of the original justification. He asserts that once Officer Garcia determined that defendant did not have identification and was thus unable to register as a visitor, any further detention was unlawful.

6

*Joseph F.*, *supra*, 85 Cal.App.4th 975 is instructive. In that case, the defendant was a non-student minor, who was on school grounds after regular school hours. (*Id.* at pp. 979-980.) The resource officer had recognized the defendant as a student from a nearby high school and reported the sighting to the assistant principal. When the assistant principal confronted the defendant, the defendant continued to walk away. (*Ibid.*) The assistant principal asked the resource officer to detain the defendant so that they could investigate whether he was trespassing. (*Ibid.*) After the defendant refused the officer's command to stop, and after some verbal and physical resistance, the officer placed the defendant in handcuffs. (*Id.* at p. 980.)

The majority in *Joseph F.* concluded that the detention of the defendant was justified. (*Joseph F.*, *supra*, 85 Cal.App.4th at p. 987.) In its reasoning, the majority recognized that California's constitutional mandate (Cal. Const., art. I, § 28, subd. (c)) and statutory scheme (§§ 626 et seq., 627 et seq.), "clearly demonstrate that schools are special places in terms of public access" and that the intent of the Legislature was to restrict such access to outsiders. (*Joseph F.*, *supra*, at p. 984.) Consistent with this intent, the court emphasized the need for school officials, who monitor access to campuses, to have information to make reasonable judgments necessary to fulfill their responsibilities. (*Ibid.*) Thus, the court concluded that school officials should be afforded "enough latitude to be able to stop someone on campus and ascertain basic information within the statutory scheme such as who the person is, why he or she is present and whether he or she is registered, if required. Without such authority, the official often would be unable to make a reasonable determination as to whether the outsider is likely to commit a disruption, is a repeat disrupter, or must register and has registered." (*Id.* at pp. 984-985.) Under the context of restricted access to school grounds, the court found the officer's detention of the defendant, in order to investigate who he was and why he was on school grounds, was justified. (*Id.* at p. 985.)

7

Similarly, in *Jose Y.*, *supra*, 141 Cal.App.4th 748, the appellate court held that a pat down search of a non-student minor was reasonable in light of the governmental interest in preventing violence on campus. There, the officer approached the defendant and two of his companions, who were on school grounds during school hours. The defendant did not have identification, but produced a registration slip from another school. (*Id*. at p. 750.) The officer decided to escort the defendant to the office to verify his identification, but first performed a pat down search for safety reasons. The search produced a knife. (*Id*. at p. 751.) Holding that the search did not violate the defendant's Fourth Amendment rights, the appellate court emphasized the fact that the defendant was not a student at the high school. "In our view, [the defendant] has a lesser right of privacy than a student who is properly on school grounds." (*Id*. at p. 752.) Given the defendant's "unauthorized and unexplained presence on campus," the court concluded that a pat down search was justified to determine whether he posed a danger to the students and faculty on campus. (*Ibid*.)

As in *Joseph F.* and *Jose Y.*, we view Officer Garcia's actions in light of the special needs of schools and California's laws restricting school access to outsiders for safety concerns. In this case, after defendant provided his name and told the officer that he did not have identification, Officer Garcia called the resource officer from Seaside High School to gather more information about defendant. Given Officer Garcia's knowledge that many outsiders lie about their presence on campus and that defendant had initially lied about being a student at Monterey High School, the officer acted reasonably in continuing to investigate who defendant was and why he was on school grounds. Furthermore, after learning that defendant had been previously involved in marijuana sales, it was reasonable for Officer Garcia to further question defendant on whether he possessed any drugs or weapons. Therefore, we conclude that the detention was proper.

8

### 4. *The Search Was Proper*

Defendant also contends that the search of his backpack was improper because the officer needed a warrant to conduct such a search. However, school officials and school resource officers, like Officer Garcia, only need a reasonable suspicion to conduct a search on school grounds. (*William G.*, *supra*, 40 Cal.3d at p. 564; *In re William V.* (2003) 111 Cal.App.4th 1464, 1469-1472 [holding that reasonable suspicion standard applies to school searches conducted by a police officer assigned to a school as a resource officer].) Thus, a warrant was not required to search the backpack. Defendant's admission to Officer Garcia that he had a knife inside his backpack was sufficient to create reasonable suspicion that defendant indeed violated section 626.10, subdivision (a)(1) by possessing a knife on school grounds. Therefore, the search of the backpack was justified.

**DISPOSITION**

The judgment is affirmed.

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.


_____
Márquez, J.


People v. Cruz
H042039