Filed 9/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>v.<br><br>FRANCIS A.,<br>　　　Defendant and Appellant. | A155082<br><br>(San Mateo County<br>Super. Ct. No. 17JW0285) |

　　　This case involves the escalation of a school rule—that students may not cut class—into a juvenile wardship proceeding with potential criminal implications. Ultimately, the district attorney filed, and the juvenile court sustained, charges against the student for misdemeanor battery and resisting a peace officer.  The evidence does not support the juvenile court's decision as to either charge.  We therefore reverse.

**BACKGROUND**

　　　In a petition filed under Welfare and Institutions Code section 602 et seq. in April 2017, the San Mateo County District Attorney alleged that on April 5, 2017, 17-year-old Francis A. (referred to below and herein as Frank) committed a battery against a peace officer in violation of Penal Code section 243,[1] subdivision (b); resisted a peace officer in his exercise of a public duty in violation of section 148, subdivision (a)(1); and willfully and maliciously disturbed another person by making a loud and unreasonable noise in violation of section 415(2).

　　　Evidence presented at the jurisdictional hearing indicates that at the beginning of his high school senior year in August 2016, Frank had an encounter with the school's new resource officer, Officer David Stahler of the Redwood City Police Department, that

---

[1]  All further statutory references are to the Penal Code unless otherwise stated.

1

caused Frank's father to file an official complaint alleging Stahler had physically handled Frank in an unlawful manner. An investigation followed, and Stahler continued as the school resource officer.

Other evidence presented at the hearing indicates that one day in April of his senior year, Frank and three other students left a substitute teacher's class without permission. A campus aide found Frank in the school library sitting at a computer and directed Frank to accompany him to the administrative vice principal's (AVP) office, where Officer Stahler was located. Students were taken to the AVP office multiple times a day for such things as not being in class. At first, Frank would not go with the aide to the AVP office, so the aide called Stahler on his radio for assistance, which was standard procedure. Frank then followed the aide out of the library but called his father on his cell phone and told the aide he wanted to go to the principal's office instead. He stopped in the hallway outside the principal's office, but the office was closed. Frank was for the most part listening to the aide and following his directives other than that he go to the AVP office. After Stahler arrived, events occurred between Stahler and Frank that are the subject of this appeal.

Stahler's confusing testimony at the jurisdictional hearing was the principal evidence the People relied on to establish their charges against Frank. Stahler testified that his primary duty as the school resource officer was to assist with exceptional discipline problems and assist with non-students on-campus or if a student was found with illegal substances or violating the Penal Code. Stahler said he met the campus aide and Frank outside the principal's office, dressed in his police uniform, soon after the aide requested his help. He noticed Frank was using his phone in violation of school policy; other evidence indicates Frank previously had been told he was prohibited from using his phone at school and that prohibited use led to temporary surrender of the phone and, for repeat use, detention. However, Stahler testified, he did *not* act to enforce the school rules about cell phone use against Frank. Rather, he verbally "encouraged" Frank for a few minutes to do as the aide instructed: "So I started trying to talk to Frank and let him know that, hey, you know, sounds like they would like you to go to the AVP office. I

tried to start to—tried to encourage him, using words. Just letting him know, hey, you know, you do need to do what they say. They are telling you to go to the office. And you actually need to put down your phone. You are not supposed to be on the phone." Stahler also told Frank, "[I]f a police officer tells you that you have to do something, you should do it" and "I want[] to make sure you understand I'm a police officer and I'm asking you to do what I'm telling you right now." Later in his testimony, Stahler said he tried to "verbally encourage" Frank to cooperate and said to Frank, "if a police officer tells you that you have to do something, you should do it. You do understand that, Frank?"

Stahler said Frank remained standing outside the principal's office talking on his phone to his father, with whom Stahler refused to talk despite Frank's urging. Stahler said he physically "encouraged" Frank to go to the AVP office by putting his left hand on Frank's back while standing to Frank's right and exerting an "[e]xtremely light amount of force, just touching to encourage [Frank] to walk down towards the AVP office." According to Stahler, Frank, talking on his phone, which he held in his left hand, "mov[ed] his arm back and away just to get my hand off of his back." In doing so, Stahler said, he "kind of brushed me, turned his shoulder, brushed my hand off of him . . . just lightly coming in contact with me, but to me that was, you know, basically a form of battery on me." Stahler thought Frank's "upper arm or elbow" came in contact with Stahler's left hand as Frank moved his arm back and away from Stahler.

At this point, Stahler believed Frank was becoming a disruption by talking loudly on his phone in the hallway while open-doored classes were in session nearby. He "decided . . . to escalate [his] force" and grabbed Frank's right wrist with his right hand in order to take Frank to the AVP office. When Frank tried to pull his arm away, Stahler, thinking that Frank had committed battery by brushing Stahler's left hand and resisted a peace officer by trying to pull away when Stahler grabbed his wrist, forced Frank to the ground, handcuffed him and arrested him. The class bell had rung at some point during their interaction, and around the time Stahler handcuffed Frank there was a "commotion" as students came into the hallway.

3

After the presentation of evidence,[2] the People argued that Frank "has a problem with authority figures and not just Officer Stahler, but authority figures at the school." According to the prosecutor, "[t]here was clearly a violation of the cell phone policy, which seems to have started . . . this whole incident and series of events." Stahler "tried to encourage" Frank to go to the office and "asked" Frank to put his phone away, but Frank did neither. Stahler put his hand on Frank's back, a "minor touch," to "encourage" him to go to the AVP office. Frank "came back, brushing Officer Stahler, which was the battery. And continued to resist throughout the entire process of just trying to get [Frank] to go to the AVP office and follow procedures." The prosecutor also argued Frank's noisiness disturbed students sitting in nearby open-doored classrooms.

Minor's counsel contended that the prosecution was using Frank's "defiant words and history of defiance and all this stuff . . . to build this up." Counsel referred to the evidence that Frank cooperated with the aide to the point of wanting to be taken to the principal's office, arguing it could be logically inferred from this that Frank had an issue with Stahler's presence in the AVP office.

As for the specific allegations against Frank, minor's counsel argued there was no evidence that Frank willfully or maliciously engaged in unreasonable noise that disturbed other students. Frank did not commit a battery because he came in contact with Stahler's hand as the result of "a reflective motion" upon being touched, did not act in a harmful or offensive manner and was not rude or talking angrily to Stahler. Frank did not resist Stahler because Stahler testified that he did not enforce the school's phone policy, which in any event could lead only to detention rather than arrest.

The prosecutor responded by emphasizing that Frank had resisted Stahler by his "initial battery" and because Frank "pulled his wrist away from Officer Stahler . . . . And

---

[2] Two videos were taken in the area of the incident; the defense showed one to the court and it was admitted into evidence. It does not appear to have been of any real use in resolving the charges against Frank, however, and it is not contained in the appellate record. We do not discuss it further.

4

that's why Officer Stahler testified that he had to take him down to the ground, because there was no other way of getting [Frank] to cooperate with his instructions in this case."

The juvenile court found that Stahler's testimony was credible. It concluded there was insufficient evidence that Frank had disturbed the peace in violation of section 415(2) and that the People had proven beyond a reasonable doubt that Frank had committed a battery against Stahler and had willfully resisted a peace officer. Frank subsequently petitioned for a new hearing under Welfare and Institutions Code section 778 and moved under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) for an in camera review of Stahler's personnel records. The court summarily denied both. At the disposition hearing, the court ordered Frank to complete 40 hours of community service and to pay a $10 fine.

Frank filed a timely notice of appeal.

## DISCUSSION

In his opening brief, Frank argues that as a matter of law he did not commit battery or resisting an officer because Stahler was not acting lawfully at the time and that the juvenile court erred in summarily denying his petition for a new jurisdictional hearing and his *Pitchess* motion. The People disagree.

We requested and received supplemental briefing from the parties regarding whether substantial evidence supports the juvenile court's sustaining of the battery and resisting an officer counts. We now discuss these issues.

### I.

### *Standard of Review*

Regarding both the battery and resisting a peace officer counts, we review the record of the jurisdictional hearing for substantial evidence. "Upon a claim of insufficient evidence to support a conviction, reviewing courts 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' 'The test on appeal becomes whether substantial evidence supports the conclusion of the

5

trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' " (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 981 (*Joseph F.*).)

"The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In assessing the sufficiency of the evidence, "[t]he test is not whether guilt is established beyond a reasonable doubt, but whether any 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.)

## II.

### *There Is Insufficient Evidence That Frank Committed Battery Against Officer Stahler.*

The crime of battery is "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Thus, it requires "(1) a use of force or violence that is (2) willful and unlawful. The first element is satisfied by any touching. [Citation.] The second element of battery, willfulness and unlawfulness, is satisfied by any touching that is harmful or offensive." (*People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*).) Section 243, subdivision (b) states, in relevant part: "When a battery is committed against the person of a peace officer . . . engaged in the performance of his or her duties . . . and the person committing the offense knows . . . that the victim is a peace officer . . . engaged in the performance of his or her duties . . . , the battery is punishable [as a misdemeanor]."

Battery is a general intent crime. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1220.) "As with all general intent crimes, 'the required mental state entails only an intent to do the act that causes the harm . . . .' " (*People v. Lara* (1996) 44 Cal.App.4th 102, 107, quoting *People v. Davis* (1995) 10 Cal.4th 463, 519, fn. 15.) " 'It has long been established that "the least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' " (*Shockley*, *supra*, 58 Cal.4th at p. 405.)

6

"Even a slight touching may constitute a battery, 'if it is done in a rude or angry way.' " (*People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006, quoting CALCRIM No. 960.)

Frank argues that as a matter of law he did not commit battery because he did not touch Stahler while Stahler was engaged in the lawful performance of his duties, since Stahler lacked any lawful authority as a police officer to touch Frank as he did. The People disagree, contending that Stahler had the discretionary authority as a school resource officer to touch Frank as he did. We need not resolve this dispute because we conclude for two separate and independent reasons that, assuming for the sake of argument that Stahler had the legal authority to put his hand on Frank, there is not substantial evidence that Frank committed a battery against him.

First, Stahler's testimony does not indicate that Frank acted willfully or unlawfully to touch him. According to section 7(1), "[t]he word 'willfully,' when applied to the intent with which an act is done . . . , implies simply a purpose or willingness to commit the act . . . . It does not require any intent to violate law, or to injure another, or to acquire any advantage." Our Supreme Court has explained, " '[T]he terms "willful" or "willfully," when applied in a penal statute, require . . . that the illegal act or omission occur "intentionally" ' " and " ' " 'implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' " ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 85.)

Stahler testified that when he put a hand on Frank's back, Frank, still on the phone talking to his father, moved his right arm back and his body away to escape Stahler's touch, and in doing so lightly brushed Stahler's hand with his right elbow or upper arm. In other words, Stahler initiated physical contact from which Frank tried to get away, and Frank's brushing of Stahler's hand was incidental to his attempt to move away from Stahler's hand. There was no substantial evidence that Frank acted *willfully* to touch Stahler at all. Stahler's testimony established that Frank's arm brushed his hand but not that he did so intentionally. For this reason alone, there is insufficient evidence to support the juvenile court's finding that Frank committed battery against Stahler.

7

Second, there is no substantial evidence that Frank's touching Stahler, even if willful, was "harmful or offensive," although this is another required element of battery. (*Shockley*, *supra*, 58 Cal.4th at p. 408.) Again, Stahler's testimony was that, after he put his hand on Frank's back to "encourage" him to go to the AVP office, Frank, while talking on the telephone with his father, lightly brushed the hand as he tried to get away from it. Stahler did *not* testify that Frank brushed Stahler in a rude or angry way. Again, Stahler testified that Frank brushed his hand as Frank tried to get away from him, not that Frank intended to touch him in a harmful or offensive manner.

The People cite *Joseph F.*, *supra*, 85 Cal.App.4th 975 to argue that even an attempt to "pull[] away" satisfies the elements of battery. But in its summary of that case, the Attorney General's office omits that Joseph F. did much more than pull away from a police officer. There, a middle school's police resource officer identified himself as a police officer to Joseph F. and his companion and sought to detain them to determine if they were trespassing on the campus. (*Id*. at pp. 979–980.) When Joseph F. cursed at him and said he did not need to listen to him, the officer attempted to apply an armlock to Joseph F., who "pulled away." (*Id*. at p. 980.) The *Joseph F.* court continued: "They struggled for several minutes. During the struggle [Joseph F.] grabbed unsuccessfully for [the officer's] baton *and also grasped [the officer's] left wrist, hyperextending it by moving it up and down and side to side*." (*Ibid*., italics added.) Joseph F. did not contest these facts, but instead argued the officer had used excessive force against him, justifying his resistance. (*Id*. at p. 989.) The facts as described by the court indicate Joseph F. engaged in an aggressive physical attack on the officer, unlike Frank's "light brushing" of Stahler while attempting to move away from him.

In short, in this case there is insufficient evidence to support either of two essential elements of the crime of battery, that the touching be willful and that it be harmful or offensive. The juvenile court's ruling sustaining the battery count must therefore be reversed.

## II.

### *There Is Insufficient Evidence That Frank Resisted Officer Stahler.*

Section 148 imposes liability on "[e]very person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." (§ 148, subd. (a)(1).) The legal elements of that crime are: " ' "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." ' " (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894–895.)

"Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148." (*In re Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.) However, the statute does not criminalize mere delay in responding to an officer's orders (*In re Chase C.* (2015) 243 Cal.App.4th 107, 119; *People v. Quiroga* (1993) 16 Cal.App.4th 961, 966) or a mere refusal to cooperate. (*People v. Allen* (1980) 109 Cal.App.3d 981, 987, fn. 1.)

There is insufficient evidence to support the juvenile court's determination that Frank willfully resisted Officer Stahler for multiple reasons. First, there is no indication Stahler was enforcing any disciplinary rules in his encounter with Frank. Although the prosecution put considerable emphasis on Frank's use of his cell phone in violation of school rules, Stahler testified that he did *not* attempt to enforce these school rules with Frank. Also, Stahler said nothing at the hearing to indicate that he was addressing an exceptional disciplinary problem; and indeed, we do not see how the wish of a class-cutting student to be disciplined at the principal's office rather than at the AVP office was one, particularly when the campus aide indicated that the need to deal with class-cutting students occurred multiple times a day.

Second, Stahler repeatedly testified that he only "encouraged" and asked Frank to follow the campus aide's instructions, at first verbally and then by placing his hand on

Frank's back. We fail to see how a student can be found to have resisted a peace officer's encouragement and requests. The very nature of such encouragement and requests indicates the student is being given a choice to do as encouraged or requested *or not*. At the very least, Stahler's approach was wholly confusing, such as when he told Frank, "I want[] to make sure you understand that I'm a police officer and I'm asking you to do what I'm telling you right now." No reasonable person could understand from such a statement that the officer was ordering Frank to do anything. Given Stahler's failure to give Frank any clear or direct orders, there was insufficient evidence that Frank willfully—meaning intentionally—resisted Stahler before Stahler grabbed Frank's arm.

As for Frank trying to pull his arm away when Stahler grabbed it, we will assume for the sake of argument that Stahler had the legal authority to grab Frank's arm because of his concern that Frank was disrupting classes by talking loudly on his phone.[3] Even then, there is no evidence that Stahler said or did anything to indicate to or inform Frank that he had disobeyed an order or otherwise to explain why Stahler was grabbing Frank's arm. There is no substantial evidence that when he tried to pull his arm away, Frank knew or reasonably should have known that Stahler was engaged in the performance of his duties as a peace officer.

The People cite *In re J.C.* (2014) 228 Cal.App.4th 1394 in support of their view that Frank's attempt to pull away from Stahler's grip hold constituted resistance. In that case, the court held that a minor's pulling away when an officer attempted to put him in a control hold was "physical resistance" in affirming a finding that the minor had violated section 148, subdivision (a)(1). (*J.C.*, at pp. 1399–1400.) But again, the Attorney General's office fails to provide a complete summary of the facts of that case. The appellate court made clear these events occurred only after the minor refused to comply with the officer's multiple *orders*, which refusal was part of the substantial evidence in support of the court's finding. The minor had threatened school employees with

---

[3] The court found the prosecution failed to establish beyond a reasonable doubt that Frank was disturbing the peace of students in their classrooms in violation of section 415(2).

10

violence, and the officer had informed him he could be arrested for that. (*Id*. at pp. 1397, 1398.) The officer directed the minor to sit down and to calm down, but the minor did neither. (*Id.* at p. 1397.) After the minor repeated one of the threats and continued to speak in a "loud, agitated, and profane" manner, the officer told the minor he was being detained and ordered him to take off his backpack and put his hands behind his head. (*Id.* at p. 1398.) The minor did not take off his backpack and, when the officer touched his elbow, pulled away and started to walk away. (*Id*. at pp. 1397, 1398.) Affirming the juvenile court ruling sustaining the charge of resisting an officer under section 148, subdivision (a)(1), the appellate court concluded: "Viewing the evidence most favorably to the judgment, the minor willfully resisted [the officer], knowing him to be a peace officer engaged in the performance of his duties. The minor did not comply with the officer's order to sit down and calm down, or with his subsequent order to submit peacefully to detention. In response to the officer's second order, the minor not only did not comply but tried to evade the officer's grasp. Substantial evidence supports the court's ruling." (*Id*. at p. 1400.) In *Joseph F*. there was evidence of unequivocal directives by the officer followed by physical resistance on the part of the minor. That is a far cry from what we have here.

By his own testimony, Stahler confronted a student who he knew had been upset in a previous physical encounter that led to the student's father filing an official complaint against him. The student had engaged in the minor misconduct of leaving class without permission and, upon being found in the library, had accompanied the campus aide who apprehended him in order to be disciplined. However, the student sought to be taken to the principal's office rather than the AVP office, where Stahler was located, and called his father when Stahler was called in for assistance. Soon after Stahler arrived, he escalated the situation. There is no indication he asked the student why he would not go to the AVP office, and he refused to talk with the student's father. He "encouraged" the student to cooperate with the campus aide, including by making physical contact with the student. When the student tried to get away from Stahler's contact, Stahler, without ever issuing a warning or command, grabbed the student's arm

11

in order to take him to the AVP office. But when the student tried to pull his arm away, Stahler forced him to the ground, handcuffed him and, rather than take him to the AVP office, arrested him for battery and resisting a peace officer.

In short, there is insufficient evidence that Frank willfully resisted Stahler in violation of section 148, subdivision (a). The juvenile court's sustaining of this count also must be reversed.

Having resolved these issues in Frank's favor, we do not address his additional claims that the juvenile court erred in summarily denying his petition for a new jurisdictional hearing under Welfare and Institutions Code section 778 and his *Pitchess* motion for an in camera review of Stahler's personnel records.

We feel compelled to observe that the officer's arrest of Frank and the People's pursuit of these meritless charges against him were unjustified. Not only did the officer's conduct fail to enhance school safety, it elevated what should have been a minor school disciplinary matter into one with potential criminal implications. The same is true of the district attorney's decision to pursue wardship proceedings on this record. The government's conduct here calls to mind one legal commentator's caution that, "[w]hile an orderly and safe classroom is vital for an adequate learning environment for both children and educators, the goal of a safe school should not be synonymous with stacking the halls with police personnel and doling out excessive punishments. On the contrary, the goal of safety should complement and enhance the overarching purpose of a school: to provide all students with a quality education. Yet this right is all too often threatened by overzealous policies that rely on gut reactions rather than evidence-driven solutions." (Ofer, *Juvenile Justice Reform in New York: Criminalizing the Classroom: The Rise of Aggressive Policing and Zero Tolerance Discipline in New York City Public Schools* (2011) 56 N.Y. L. Sch. L. Rev. 1373, 1375.)[4]

---

[4] Other legal commentators have also expressed concern about an emerging criminalization of ordinary student misconduct. (See Note, *"His Wrists Were Too Small": School Resource Officers and the Over-Criminalization of America's Students* (2016) 6 U. Miami Race & Soc. Just. L. Rev. Iss. 193, 202–203, 215 [noting studies that

**DISPOSITION**

The juvenile court's orders appealed from are reversed.

---

found an increase in school-based arrests for relatively minor misbehaviors since the increase in police presence in schools and commenting that an "increased reliance on law enforcement to discipline students has contributed to the school-to-prison pipeline"].)

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MILLER, J.

_People v. Francis A._ (A155082)

Trial Court: San Mateo County Superior Court

Trial Judge: Hon. Elizabeth Lee

Counsel:

Jonathan Soglin, Paula Rudman, Nathaniel Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.